UNITED STATES of America, Appellee,

v.

Charles Hedrick STANLEY, Appellant.

No. 78–5184.

United States Court of Appeals, Fourth Circuit.

Argued March 16, 1979.

Decided May 3, 1979.

---

Keith S. Snyder, Asheville, N. C., for appellant.

Susan S. Craven, Asst. U. S. Atty., Asheville, N. C. (Harold M. Edwards, U. S. Atty., Asheville, N. C., on brief), for appellee.

Before WINTER and HALL, Circuit Judges, and HARVEY *, District Judge.

K. K. HALL, Circuit Judge:

Appellant Charles Hedrick Stanley, a convicted felon, was tried and convicted upon a two count indictment charging him with possession of a Mannlicher pistol (Count I) and possession of a Derringer pistol and a Gewehrlaufstal shotgun (Count II). 18 U.S.C.A. App. § 1202(a). These weapons were seized by federal agents in three separate searches and admitted into evidence over Stanley's objection. Apparently conceding that the Derringer pistol was seized pursuant to a valid search warrant, Stanley assigns as error the district court's refusal to suppress the Mannlicher pistol and the Gewehrlaufstal shotgun. He also contends that his convictions cannot be sustained in any event because the evidence was insufficient to show his possession of the weapons.

We find that the evidence of possession was sufficient on both counts and that the Mannlicher pistol was properly admitted into evidence. However, we find that the Gewehrlaufstal shotgun was unlawfully seized and should have been suppressed at trial. Accordingly, the conviction on Count I is affirmed and the conviction on Count II is reversed.[1]

### The Seizures

*The Mannlicher pistol.* On February 15, 1978 agents of the Federal Bureau of Alcohol, Tobacco and Firearms arrived at Southeastern Shooters Supply, Inc., located in Bumcombe County, North Carolina, to execute a search warrant upon the proprietor of the business. Stanley and several other persons were on the premises at this time. They were detained briefly, patted down for weapons and asked for identification. They were also given their *Miranda* rights.

Several minutes later Stanley and the other patrons were told that they were free to leave. Outside the store Stanley was approached by Agent Flack, who asked him if he had a way to get home. Stanley responded that he did, indicating a van parked nearby. Flack then asked if there were any machine guns or shotguns in the vehicle; Stanley said there were not, but there might be a pistol belonging to his wife. Agent Flack said "Let me see it" or "Let's look at it," whereupon Stanley opened the van door, took out the Mannlicher pistol and surrendered it to the agent. Upon Stanley's request Flack tendered a receipt for the pistol.

*The Derringer pistol.* Two days later, on February 17, 1978, a federal search warrant was executed on the mobile home owned and occupied by Stanley and his wife as their residence.[2] Stanley was given his *Miranda* rights by the ATF agents and indicated that he understood those rights. Inside the mobile home, a Derringer pistol located on a coffee table was seized. Stanley's wife told the agents at this time that the Derringer pistol, as well as the Mannlicher pistol seized earlier, were her weapons.

*The Gewehrlaufstal shotgun.* Parked outside and nearby was a white Cadillac, in a parking area which accommodated six or seven cars and was used by Stanley and three other tenants of the mobile home park. Agent Plemmons told Stanley during the search of the mobile home that he needed to inspect the vehicle, and that Stanley should either give him the keys or accompany him to the car and unlock it. Stanley went outside with Plemmons, the trunk of the Cadillac was unlocked, and a Gewehrlaufstal shotgun therein was seized.

---

* Honorable Alexander Harvey, II, United States District Judge for the District of Maryland, at Baltimore, sitting by designation.

1. Since possession of the Derringer pistol and the Gewehrlaufstal shotgun were combined in a single count, disposition of this case presents an unusual problem. See pp. 871-872 *infra.*

2. The search warrant was obtained for "the residence of Charles Stanley, 132 Starnes Cove Road, Asheville, N.C., being a Brown and Cream House Trailer. . . ."

### The Suppression Issues

*The Mannlicher pistol.* Stanley makes two arguments concerning the seizure of the Mannlicher pistol. First, the weapon was discovered as a direct result of Stanley's statement, made in response to Agent Flack's questioning, that there was a pistol in the van. Since Stanley was not re-advised of his *Miranda* rights before he made the statement, the discovery of the pistol was therefore the "fruit of the poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Second, the warrantless search of the van was unlawful since there was no probable cause, no exigent circumstances and no consent on Stanley's part.

■ The first contention is without merit. It is too well settled to admit of argument that *Miranda* warnings are only required for custodial interrogation. Here, Stanley had been told that he was free to go and there is no evidence that Agent Flack restrained his freedom in any way after he left the building. Although from Stanley's subjective point of view the questioning may have taken place in a "coercive environment,"

> "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime . . . *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited."

*Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).

■ Stanley's second contention, that he did not consent to the search of the van, was decided adverse to him by the district court. Consent, of course, must be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973). Although Stanley claims he did not know that he could refuse Agent Flack's request to take the pistol from the van, this fact is not determinative. *Id.* at 249, 93 S.Ct. 2041. Rather, it is one factor to be considered in the factfinding process.

■ The evidence shows that Stanley, a convicted felon, had some experience in dealing with law enforcement officials. He had been given *Miranda* warnings in the store only a few minutes before the interview outside with Agent Flack. It is uncontroverted that Flack never told Stanley that he had to get the weapon, nor did Stanley indicate in any way that he did not wish to do so. On these facts, we agree with the district court's conclusion that Stanley voluntarily consented to the search of the van, and the fruit of that search, the Mannlicher pistol, was properly admitted into evidence.[3]

*The Gewehrlaufstal shotgun.* Stanley makes two arguments concerning the seizure of the shotgun. First, the automobile from which the weapon was seized was not within the curtilage of the mobile home described in the search warrant, as the government successfully argued at trial. Second, he did not consent to the search of the Cadillac.[4]

The government's contention that the parking lot (and the Cadillac parked there-

---

**3.** Our finding of voluntary consent obviates the necessity to address the issues of probable cause and exigent circumstances. Similarly, we need not address the government's argument that the search fell within the "automobile exception" to the fourth amendment's warrant requirement.

**4.** We need deal with this argument only in passing. The circumstances surrounding the search of the Cadillac were significantly differ-

ent from those surrounding the earlier search of the van; agents had entered Stanley's home and restrained his freedom, the Derringer pistol had already been seized, and the agents implied that the search warrant gave them authority to search the automobile. On these facts the district court ruled that Stanley had not voluntarily consented to the search of the Cadillac, and we sustain this conclusion.

on) were within the curtilage of Stanley's home, and thus covered by the warrant for that home, presents a unique twist in the law. The concept of curtilage evolved to define and extend the protections of the fourth amendment. *E. g., United States v. Mullin,* 329 F.2d 295 (4th Cir. 1964) (smokehouse located 75′ from residence is within curtilage of that residence and thus within the prohibition against warrantless searches). In the usual case the government argues that the area searched was *not* within the curtilage of a home. Thus the area is without the protection of the fourth amendment, *cf. United States v. Brown,* 487 F.2d 208, 210 (4th Cir. 1973), *cert. denied,* 416 U.S. 909, 94 S.Ct. 1617, 40 L.Ed.2d 114 (1974), and the defendant may have no standing to object to the search. *E. g., United States v. Minker,* 312 F.2d 632 (3rd Cir. 1962), *cert. denied,* 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). *See also Katz v. United States,* 389 U.S. 347, 350–53, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The "common area" curtilage issue has been a thorny one for the courts. *Compare Fixel v. Wainwright,* 492 F.2d 480 (5th Cir. 1974) (back yard of apartment complex within curtilage of individual apartments) *with United States v. Miguel,* 340 F.2d 812 (2d Cir.), *cert. denied,* 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965) (lobby of apartment house not within curtilage of individual apartments). "Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family." *Care v. United States,* 231 F.2d 22, 25 (10th Cir.), *cert. denied,* 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956).

■ We hold that the common area parking lot on which Stanley's automobile was parked was not within the curtilage of his mobile home. The parking lot was used by three other tenants of the mobile home park. It contained parking spaces for six or seven cars. No particular space was as-signed to any tenant. Although on the day of the search the Cadillac was parked in a space close to Stanley's home, that space was not annexed to his home or within the general enclosure surrounding his home. Therefore, the federal search warrant for the mobile home did not, as a matter of law, include within its scope the parking lot and by extension the Cadillac.

■ Nor can we accept the government's argument that the language of the search warrant itself may be read to include the parking lot within its description. The fourth amendment states that

". . . no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S.Const. amend. IV. The search warrant was obtained for "the residence of Charles Stanley, 132 Starnes Cove Road, Asheville, N.C., being a Brown and Cream House Trailer. . . ." Clearly these words do not describe with particularity a Cadillac automobile parked outside on a common parking lot.

Finally, although the government argues that it had probable cause to search the automobile, this is irrelevant to the analysis unless the search can be brought within one of the narrowly drawn exceptions to the warrant requirement. Manifestly, it cannot. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

We hold that the Gewehrlaufstal shotgun was unlawfully seized and the district court erred in denying Stanley's motion to suppress. It follows that the conviction under 18 U.S.C.A. App. § 1202(a) for possession of this weapon must be reversed.

### The Possession Issue

■ Stanley argues that the evidence at trial was insufficient to support one element of § 1202(a), his possession of the Mannlicher and Derringer pistols.[5] We disagree.

5. We need not consider this argument as it relates to the Gewehrlaufstal shotgun.

We have held that possession in a case under § 1202(a) "depend[s] on the defendant's 'control and dominion' over the weapons." *United States v. Scarborough,* 539 F.2d 331, 334 (4th Cir. 1976), *aff'd,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). Here, the Mannlicher pistol was found in a van which Stanley was driving. He requested and received a receipt for the gun. The Derringer pistol was found on a coffee table in his home, and he admitted at this time that he was a gun collector. *See United States v. Craven,* 478 F.2d 1329 (6th Cir. 1973). Although Stanley's wife told the investigating agents that the guns belonged to her, she did not testify at trial and, in any event, her ownership is not inconsistent with Stanley's possession. *See United States v. Blanton,* 520 F.2d 907, 912–13 (6th Cir. 1975). We think the evidence of Stanley's control and dominion over the weapons sufficient for the trier of fact to conclude that he possessed them within the meaning of § 1202(a).

## *Disposition*

■ Stanley was tried and convicted upon a two count indictment, Count I charging him, a convicted felon, with possession of a Mannlicher pistol, and Count II charging him, a convicted felon, with possession of a Derringer pistol *and* a Gewehrlaufstal shotgun. Having reversed Stanley's conviction for possession of the shotgun, we are faced with a unique problem: what remains of Count II?

Fed.R.Crim.P. 8(a) permits the joinder of two or more offenses in the same indictment, but requires that each be stated in a separate count. Here, the government joined two separate offenses—separate violations of § 1202(a)—in a single duplicitous count. *See Bins v. United States,* 331 F.2d 390 (5th Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964).

It has been said that duplicity is rarely prejudicial, *e. g., Tripp v. United States,* 381 F.2d 320, 321 (9th Cir. 1967), in part because

a general verdict of not guilty on the duplicitous count bars reprosecution on any of the offenses embraced within it. *Crain v. United States,* 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896), *overruled on other grounds in Garland v. Washington,* 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914). But appellate courts have reversed general verdicts of guilty on duplicitous counts. *Bins v. United States, supra; Driscoll v. United States,* 356 F.2d 324, 332 (1st Cir. 1966), *vacated on other grounds,* 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1967).

> "The failure to correct the duplicitous nature of the indictment in some manner was error. This becomes clear when you try to determine what the jury found. The jury cannot find a defendant guilty as to one of the offenses charged in the duplicitous count and not guilty as to the other charge in the same count; and a general verdict of guilty does not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all of them."

*Bins v. United States,* 331 F.2d at 393.

Here, the district court rendered a general verdict of guilty on Count II. Had he indicated that he found Stanley guilty of possessing both the Derringer pistol and the Gewehrlaufstal shotgun, we would be inclined to find the duplicity harmless error. Our reversal of the shotgun conviction would not affect the pistol conviction, and we would simply remand for resentencing on Count II.[6] But the court found:

> "The Court finds from this evidence and beyond a reasonable doubt that the Defendant was convicted in the Superior Court of Henderson County, North Carolina, on May 3, 1973, of a criminal offense, which is and was a felony, and that on or about February 15, 1978, he did have in his possession a firearm [the Mannlicher pistol] and that again on February 17, 1978, *he had in his possession a firearm.*"

(Emphasis added) From these words we cannot ascertain whether Stanley was

---

**6.** This same conclusion would follow if a jury had returned a verdict of guilty on Count II after being properly instructed that it must find

from the evidence that Stanley had in his possession *both* the Derringer pistol and the Gewehrlaufstal shotgun.

found guilty of possessing the Derringer pistol or the Gewehrlaufstal shotgun or both on February 17. Under the rationale articulated in *Bins v. United States, supra,* the conviction on Count II must be reversed in whole and the count dismissed.[7]

*AFFIRMED IN PART; REVERSED IN PART.*

---

7. From the district court's language we may infer that Stanley was found guilty of possessing one of the weapons and not guilty of possessing the other. Since he may have been acquitted of possessing either the Derringer or the Gewehrlaufstal, double jeopardy would bar his retrial on either offense. *Cf. Crain v. United States, supra.*