[No. 7834-5-III.  Division Three.  October 27, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. MANUEL ANDREAS POURTES, *Appellant.*

---

[4]We acknowledge that our statement of the standard of review in *Durham* was incomplete. *See Durham,* 31 Wn. App. at 676-77.

*Victor Lara* and *Schwab, Kurtz & Hurley,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Michael McCarthy, Deputy,* for respondent.

GREEN, J.—Manuel Andreas Pourtes a/k/a Manuel Arellaneos Acosta appeals his conviction of possession of cocaine. The sole issue is whether the curtilage of a residence described in a search warrant includes the adjoining public street and its shoulder.

The facts are undisputed. On March 20, 1986, officers of the Yakima City/County Narcotics Unit executed a search warrant on cabin 3 at 810 Tennant Lane, Yakima. The warrant authorized the officers to search the premises "and all buildings and outbuildings thereon, and all property real and personal situated on said described property . . ."

The real property described in the warrant adjoins Tennant Lane. There is a 50–foot main driveway from Tennant Lane with additional driveways off the main driveway to each of the three cabins. As the officers were

executing the warrant, Mr. Pourtes arrived in a car driven by Marcelino Vargas. They parked the car on the shoulder of Tennant Lane. Both passengers in the car were immediately arrested because the police believed Mr. Pourtes was armed. The police then moved the vehicle from Tennant Lane driving down the main driveway and the driveway to cabin 3 and parked in a space next to the cabin. While searching the car, they found a cassette tape case containing cocaine, resulting in Mr. Pourtes being charged with possession. He moved to suppress the evidence, but the motion was denied. Following a "stipulated trial", the court found Mr. Pourtes guilty. He appeals.

■ Mr. Pourtes contends the car parked on a public street was not within the curtilage of the adjoining private property and therefore all evidence seized from it was inadmissible. We agree and reverse.

> At common law, the curtilage is the area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life," *Boyd* v. *United States,* 116 U. S. 616, 630 [29 L. Ed. 746, 6 S. Ct. 524, 532] (1886), and therefore has been considered part of the home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.

*Oliver v. United States,* 466 U.S. 170, 180, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984). No single factor is determinative of the question of the scope of the curtilage:

> Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.

(Footnote omitted.) *Care v. United States,* 231 F.2d 22, 25 (10th Cir.), *cert. denied,* 351 U.S. 932 (1956); *State v. Niedergang,* 43 Wn. App. 656, 660, 719 P.2d 576 (1986). The

determination of what is curtilage is accomplished by making and reasoning from determinations of fact as to proximity, use and privacy expectation. *Niedergang,* at 660. Curtilage must be an area in which there is some "reasonable expectation of privacy". *See United States v. Williams,* 581 F.2d 451, 453 (5th Cir. 1978) (quoting *Katz v. United States,* 389 U.S. 347, 360, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring)), *cert. denied,* 440 U.S. 972 (1979).

This court in *State v. Cottrell,* 12 Wn. App. 640, 643–44, 532 P.2d 644, *rev'd on other grounds,* 86 Wn.2d 130, 542 P.2d 771 (1975) held a public parking place was not part of the "premises" described in the warrant and suggested the seizure there would not have been permissible even if the warrant specified "curtilage".

In *Niedergang* the warrant authorized the search of a residence and "the curtilage thereto". Mr. Niedergang's car was parked within two steps of the house, but in an area set off by a curb where other people could turn around and park their cars. The court held the place where the car was parked was not curtilage to the residence and thus a search of the car was not authorized by the warrant.

In *United States v. Stanley,* 597 F.2d 866, 870 (4th Cir. 1979), a search warrant was issued for a mobile home and its curtilage. The suspect's car was parked in a common area parking lot used by three other tenants of the mobile home park. The lot contained several spaces with no particular space assigned to any one tenant. On the day of the search, the suspect's car happened to be parked immediately next to his home. The court held that because other tenants could have parked there, the car was not "annexed" to the home or within the "general enclosure" surrounding the home. In *State v. Parsons,* 83 N.J. Super. 430, 200 A.2d 340, 349 (1964), the court held that a warrant to search the "premises" occupied by the defendant did not authorize the search of his car because it "was on the street", not on the

defendant's premises. Likewise, in *United States v. Roberts*, 747 F.2d 537, 542 (9th Cir. 1984), the court held a private road used in common with residents of five other houses was not within the curtilage of the defendant's residence because (1) it did not provide the setting for intimate activities of home life; (2) it was easily accessible to public agencies who had to use the road to perform their services; and (3) if the road were considered within the curtilage, "the boundaries of the curtilage could conceivably extend indefinitely."

■ Consequently, we conclude the court erred in ruling the car parked on a public street was within the curtilage of the adjoining property. That defect is not cured by the officers taking possession of the car and parking it beside Mr. Pourtes' cabin.

*United States v. Combs*, 468 F.2d 1390 (6th Cir. 1972) and *State v. Graham*, 186 Conn. 437, 441 A.2d 857 (1982), cited by the State, are factually distinguishable and not controlling here. The record in *Combs* showed (1) the warrant authorized a search of "'the premises,' including Pearl Combs' house and 'all outbuildings and vehicles thereon, including any and all *adjacent* properties used by the said Pearl Combs.'" (Italics ours.) *Combs*, at 1391; (2) the car was parked 20 feet from the house and where the Combs family generally parked their cars; and (3) the house was located in a remote area. In *Graham*, at 444, the court pointed out the location of the truck at the end of the driveway not only obstructed the police from executing the warrant, "but also provided any occupant of the premises to be searched with a convenient get–away vehicle." In those circumstances, the police were warranted in moving the truck closer to the house where it could be kept under observation. The truck in that case was parked on a 150– to 200–foot–long driveway. *Graham*, at 438. Here, the Pourtes car was not parked on his premises.

584

Reversed.

McInturff, C.J., and Thompson, J., concur.