BOWEN, Presiding Judge.
John Paul Rogers was convicted for the unlawful possession of marijuana and sentenced to thirteen months’ imprisonment. That sentence was suspended and Rogers was placed on two years’ probation. We reverse that conviction because of an illegal search.
I
Rogers argues that his motor home was illegally searched and that the evidence found therein should have been suppressed. We agree.
On August 6, 1986, Dale County Deputy Sheriff Butch Jones and other law enforcement officers executed a search warrant on the residence of Ronald DeFrancisco. The search warrant described the residence as “# 1 Thomas’s Apartments, Dadeville, Dale County, Alabama.” Deputy Jones’s affidavit in support of that warrant stated that his informant had observed marijuana in the living room of this residence. The affidavit did not contain any indication concerning the sale of marijuana. The search warrant specifically and only authorized a search of Ronald DeFrancisco and the “above described premises.”
The search revealed marijuana inside the apartment and inside a motor home parked 50 feet away from the apartment. An electrical extension cord came out a front window of the apartment and was “hooked up” *720 to the back of the motor home. The residence that was searched is one of four units in an apartment complex. The motor home was parked in what appears to be the parking area in front of the apartment. From the photograph introduced into evidence, this common parking area appears to be some type of paved strip which runs in front of the apartments.
The informant had only “described” this motor home to Deputy Jones. Although a law enforcement officer had observed several people enter and leave the motor home the night before it was searched, Jones had not mentioned this vehicle in his affidavit or to the issuing district court judge in securing the search warrant.
The motor home had a Texas license tag and was registered to the defendant. Deputy Jones was aware of this and knew that the vehicle did not belong to DeFrancisco before the search was conducted. Before forcing entry into the locked motor home, Jones telephoned the then-District Attorney and obtained his approval.
II
The issue presented is whether a search warrant directed to the premises of a particular apartment of a multi-unit apartment complex authorized the search of a vehicle located in the parking area in front of the apartment. To answer this question, we must address two additional questions: Was the motor home located on the premises or curtilage of the described apartment and, if so, were there reasonably sufficient indicia of ownership or control of the motor home by the apartment resident?
“A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.” United States v. Ross, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 2170-71, 72 L.Ed.2d 572 (1982). The generally accepted rule is that “a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises.” United States v. Percival, 756 F.2d 600, 612 (7th Cir.1985), and cases cited therein. See also Price v. State, 531 So.2d 699 (Ala.Cr.App.1987), reversed on other grounds, 531 So.2d 697 (Ala.1988); Korreckt v. State, 507 So.2d 558, 561-63 (Ala.Cr.App.1986); Griffith v. State, 386 So.2d 771, 773-74 (Ala.Cr.App.), cert. denied, Ex parte Griffith, 386 So.2d 775 (Ala.1980). “[T]he conclusion that a description of premises covers vehicles parked thereon should at least be limited to vehicles under the control of the person whose premises are described.” W. LaFave, 2 Search and Seizure, § 4.10(c) at 323 (2nd ed. 1987).
Here, the search warrant authorized the search of a particular apartment and authorized the search of “the above described premises.” “[T]he term ‘premises,’ ... encompasses the areas, commonly referred to in search and seizure cases, as the curti-lage of a dwelling.” Korreckt v. State, 507 So.2d 558, 563 (Ala.Cr.App.1986). See also Dennis v. State, 40 Ala.App. 182, 185, 111 So.2d 21, cert. denied, 269 Ala. 695, 111 So.2d 25 (1959) (“[T]he word ‘private dwelling,’ ... means the dwelling house and its curtilage.”); Demouy v. Jepson, 255 Ala. 337, 341, 51 So.2d 506 (1951) (The word “home” means the house and the curti-lage.).
A driveway is considered within the curtilage of a residence. Landers v. State, 250 Ga. 808, 301 S.E.2d 633, 634 (1983) (“[A] driveway is properly considered within the curtilage of the dwelling it services, at least where the driveway is located on the dwelling owner’s property. But ‘curti-lage’ does not include neighboring or nearby property which is beyond the property lines of the dwelling specified in the warrant.”); 2 LaFave at 324.
It is also clear that a “premises” search warrant “would not cover a car parked nearby on a public street, even if it were clear beyond question that the vehicle belonged to the occupant of the described premises.” 2 LaFave at 324; State v. Pourtes, 49 Wash.App. 579, 744 P.2d 644, 645-46 (1987); State v. Cottrell, 12 Wash.App. 640, 532 P.2d 644, 647, reversed on *721 other grounds, 86 Wash.2d 130, 542 P.2d 771 (1975); Hartpence v. State, 509 So.2d 975 (Fla.Dist.Ct.App.1987).
In United States v. Stanley, 597 F.2d 866, 870 (4th Cir.1979), it was held that “the common area parking lot on which [the defendant’s] automobile was parked was not within the curtilage of his mobile home.” There the court observed:
“The parking lot was used by three other tenants of the mobile home park. It contained parking spaces for six or seven cars. No particular space was assigned to any tenant. Although on the day of the search the Cadillac was parked in a space close to [the defendant’s] home, that space was not annexed to his home or within the general enclosure surrounding his home. Therefore, the federal search warrant for the mobile home did not, as a matter of law, include within its scope the parking lot and by extension the Cadillac.” Stanley, 597 F.2d at 870.
See also State v. Coburne, 10 Wash.App. 298, 518 P.2d 747, 757 (1973) (vehicle parked in alley parking lot available to all users of apartment not within curtilage).
However, the opposite conclusion was reached in Joyner v. State, 303 So.2d 60, 64 (Fla.Dist.Ct.App.1974), where a Florida appellate court held:
“We now hold that yards, courtyards, driveways and parking areas usually and customarily used in common by occupants of apartment houses, condominiums and other such complexes with other occupants thereof constitute a part of the curtilage of a specifically described apartment or condominium or other living unit thereof and that an automobile located on such common areas and identified by the use of keys obtained from the occupant of such specifically described apartment, condominium or other living unit is a part of that curtilage and subject to search upon the issuance of a valid warrant authorizing a search of the living unit and curtilage thereof.”
In Joyner, “the vehicle in question was parked in the spot designated for the apartment to be searched and could be identified as belonging to the owner of that apartment.” State v. Haugee, 402 So.2d 1216, 1219 (Fla.Dist.Ct.App.1981) (Orfinger, J., dissenting). See also State v. Haugee, 402 So.2d 1216, 1217 (Fla.App.1981), rev. denied, 415 So.2d 1360 (Fla.1982) (“Where ... the vehicle is in the common area of a multi-unit complex only one unit of which is described in the warrant, some connection of the vehicle to the dwelling unit is reasonable and necessary in order to extend to the vehicle the authority given by the warrant to search the dwelling unit.”); Simmons v. State, 491 So.2d 1307, 1309 (Fla.Dist.Ct.App.1986) (“Subsequent cases have adhered to the requirement of some eviden-tiary connection of the vehicle with the residence.”); Stipp v. State, 355 So.2d 1217, 1218 (Fla.DistCtApp.1978), cert. denied, 364 So.2d 893 (Fla.1978) (“We think the search of these vehicles was authorized under the warrant since they were in the curtilage described and under the control of the suspects in the house.”).
Our research indicates that Florida has assumed a unique position in this regard. Compare United States v. Cruz Pagan, 537 F.2d 554, 558 (1st Cir.1976) (underground parking garage of condominium did not form part of the curtilage of defendant’s apartment); United States v. Miguel, 340 F.2d 812, 814 (2nd Cir.1965), cert. denied, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965) (lobby of multi-tenanted apartment house not within curtilage of defendant’s apartment); Mahar v. State, 137 Ga.App. 116, 223 S.E.2d 204, 207 (1975), cert. denied, Mahar v. Georgia, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976) (truck in parking lot 150 feet away from defendant’s apartment not within curti-lage); People v. Becker, 188 Colo. 160, 533 P.2d 494, 495 (1975) (common area in front of apartments contiguous to all apartments and not fenced in not part of curtilage of particular apartment); Littke v. State, 97 Okl.Cr. 78, 258 P.2d 211, 214 (1953) (garage apartment occupied by separate family not part of the curtilage of defendant’s residence); Commonwealth v. Thomas, 358 Mass. 771, 267 N.E.2d 489, 491 (1971) (cellar not within curtilage of particular apartment); Commonwealth v. Pacheco, 21 Mass.App. 565, 488 N.E.2d 42 (1986) (cellar *722 not part of curtilage of first-floor apartment); People v. Rooney, 175 Cal.App.3d 634, 221 Cal.Rptr. 49, 56 (1985) (communal trash bin in subterranean garage of 28-unit apartment building not within curtilage).
“In a modem urban multifamily apartment house, the area within the ‘curti-lage’ is necessarily much more limited than in the case of a rural dwelling subject to one owner’s control. (Citations to comparison cases omitted.) In such an apartment house, a tenant’s ‘dwelling’ cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control.” Thomas, 267 N.E.2d at 491.
In United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the United States Supreme Court “narrowed” the definition of curtilage. In dealing with the open fields doctrine, the court stated:
“[W]e believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.” Dunn, 107 S.Ct. at 1139.
In his dissent, Justice Brennan observed, “[i]n narrowing the meaning given to the concept of curtilage, the Court also narrows the scope of searches permissible under a warrant authorizing a search of building premises.” Dunn, 107 S.Ct. at 1145-46.
In determining curtilage, “the primary focus is whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home.” Dunn, 107 S.Ct. at 1139, n. 4. Here, the State failed to show that the parking area in front of the apartments fell within the curtilage of the particular apartment described in the warrant, that it was within an area exclusively controlled by the owner of the apartment, or that that owner had any expectation of privacy in the motor home. “Curtilage must be an area in which there is some ‘reasonable expectation of privacy.’ ” Pourtes, 744 P.2d at 645. We conclude that the motor home was not within the curtilage of the apartment. Therefore, the search warrant for the apartment did not authorize a search of the motor home.
Additionally, we note that here the police knew that the motor home belonged to an individual other than the owner of the apartment. “[A] search warrant authorizing a search of the dwelling of a named individual does not authorize the search of a backroom in the house which was rented to another person.” 68 Am.Jur.2d Searches and Seizures § 111 at 766 (1973).
In Sadie v. State, 488 So.2d 1368, 1374-76 (Ala.Cr.App.1986), this Court held that a description in an affidavit supporting a search warrant that referred to a particular business in a multi-unit commercial building, limited the permissible search to a search of the particular business named in the affidavit, and a search of a second business, whose existence was known or should have been known by the officers securing the warrant, although owned by the same person and having a common interior door, exceeded the permissible scope of the search warrant. In Korreckt, 507 So.2d at 563, this Court issued a warning that, when a search warrant for premises is intended to cover a vehicle, the better practice is to include a description of the vehicle in the warrant.
“The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one ‘particularly describing the place to be searched and the persons or things to be seized.’ The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.” Maryland v. Garrison, 480 *723 U.S. 79, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987).
“The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate.” Garrison, 107 S.Ct. at 1018.
In reaching the conclusion in this case that a vehicle parked in the parking area of an apartment building is not within the curtilage of any particular apartment, we should not be misunderstood as holding that such a vehicle may never be searched by officers executing a search warrant for the apartment. “[U]nder some circumstances a car not on the premises may be amenable to search without warrant under the Chambers [v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) ] doctrine, and the consequences of the immediately preceding search of the premises may be very relevant ... on the question of whether such a warrantless search may constitutionally be undertaken.” 2 LaPave § 4.10(c) at 324.
The defendant’s motion to suppress the items seized from the motor home should have been granted. The judgment of the circuit court is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
All Judges concur.