996 F.2d 1213
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Gary Dean MEADE, Defendant-Appellant.
 No. 93-5069.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: June 7, 1993.
Decided: June 22, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Samuel G. Wilson, District Judge. (CR-92-38)
 Michael Morchower, Morchower, Luxton & Whaley, Richmond, Virginia, for Appellant.
 E. Montgomery Tucker, United States Attorney, Ruth E. Plagenhoef, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before HALL, WILKINSON, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Gary Dean Meade appeals from his convictions for the possession of a firearm by a convicted felon in violation of 18 U.S.C.A. §§ 922(g)(1), 924(e)(1) (West Supp. 1993) and possession of an unregistered firearm in violation of 26 U.S.C.A.s 5861(d) (West 1989). Meade argues that there was insufficient evidence that he constructively possessed a firearm. Because we find sufficient evidence to support his conviction, we affirm.
 
 I.
 
 2
 At a day-long jury trial, the evidence demonstrated that Christopher Hammer responded to an advertisement in a newspaper, offering to sell a Chevy Nova. Although Meade's son, Dean, initially answered the phone, Gary Meade called Hammer back and arranged to meet Hammer. The two men agreed to exchange a sawed-off shotgun, a .22 rifle, and a car stereo speaker for the Chevy Nova. The exchange occurred at the Ridgecrest Apartments. A few days later, Augusta County deputies, responding to a complaint that a man was firing a shotgun, approached Meade in a parking lot at the Ridgecrest Apartments. The deputies did not find a shotgun during a search around Meade's van. However, the deputies immediately discovered the shotgun in the shrubbery[1] next to the driver's side of the van after receiving consent to search the van.[2]
 
 
 3
 The evidence also established that a man, who identified himself as Gary Meade, called the police station and inquired about how he could recover the shotgun.[3] Meade also inquired, in person at the police station, about the gun.
 
 
 4
 Meade's son, Dean, testified that the shotgun belonged to his father. Meade testified, that although he traded the car for the shotgun, his son was the actual owner of the shotgun.
 
 II.
 
 5
 In evaluating the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the government, and determine if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Furthermore, we accord the benefit of all reasonable inferences to the government. Tresvant, 677 F.2d at 1021. This Court does not weigh evidence or review credibility of witnesses in resolving issues of substantial evidence. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).
 
 
 6
 Meade's inquiry on how to recover the shotgun, see United States v. Stanley, 597 F.2d 866, 871 (4th Cir. 1979), and the testimony of Hammer, the deputies, and Meade's son, Dean, linking Meade with the gun, see United States v. Poore, 594 F.2d 39, 43 (4th Cir. 1979), was sufficient evidence for a reasonable jury to find that Meade possessed the gun. Accordingly, we affirm his conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Meade testified that, on this day, Richard Little saw the gun on the dashboard of the van and asked if it was for sale. Meade testified that, after he informed Little that he was selling the shotgun for his son, Little asked if he could test fire it. Finally, Meade testified that Little fired the gun and threw it in the bushes when the police arrived
 
 
 [2]
 Meade initially refused to consent to a search of his van, but later granted consent after he allegedly retrieved some cigarettes
 
 
 [3]
 Meade alleged that the gun was retrieved during an illegal search