28 F.3d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Lee SIMPSON, Defendant-Appellant.
 No. 93-5238.
 United States Court of Appeals, Fourth Circuit.
 Argued April 14, 1994.
Decided June 9, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Chief District Judge. (CR-92-20-F)
 Argued: George Alan DuBois, Jr., Asst. Fed. Public Defender, Raleigh, N.C., for appellant.
 John Howarth Bennett, Asst. U.S. Atty., Raleigh, N.C., for appellee.
 On Brief: James R. Dedrick, U.S. Atty., Raleigh, N.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Donald L. Simpson appeals his convictions of both counts of a two-count indictment charging him with Felon in Possession of a Firearm, in violation of 18 U.S.C. Sec. 922(g) and Possession of an Unregistered Weapon, in violation of 26 U.S.C. Sec. 5861(d). Simpson asserts three grounds for appeal. First, Simpson contends that there was insufficient evidence to support his convictions. Second, Simpson contends that the trial court abused its discretion when it excluded the testimony of an Officer T.H. Lloyd of the Wilmington Police Department, who would have testified that, according to eyewitnesses, one of the passengers riding with Simpson on the night a shotgun was recovered from Simpson's car possessed a similar shotgun on some later occasion. Third, Simpson contends that his due process right to present evidence was denied when the district court excluded Officer Lloyd's testimony.
 
 
 2
 Because the grounds for reversal raised by the defendant are without merit, we affirm the convictions.
 
 
 3
 * In the early morning hours of March 18, 1992, Simpson, a convicted felon, was driving his wife's 1985 Oldsmobile Cutlass. Also riding in the car were three other men. Officer Mark Sharpe of the Wilmington Police Department passed the car and recognized it as the one that Simpson had been driving when Sharpe had arrested Simpson in the past. Remembering that Simpson's license had been revoked, Sharpe decided to stop the car. When he pulled the car over, Simpson and the other men exited the car and fled on foot. Sharpe caught up to Simpson and arrested him for driving on a revoked license. Sharpe smelled a strong odor of alcohol on Simpson's breath.
 
 
 4
 Sharpe placed Simpson in his patrol car and conducted a search of Simpson's car. Sharpe saw the butt of a shotgun on the floorboard under the driver's seat. The unloaded shotgun was wrapped in a blue jean jacket and was lying crosswise with the stock pointing toward and nearly touching the driver's side door. The barrel pointed toward the passenger door but did not protrude beyond the driver's side of the front seat. The barrel of the shotgun was 16 3/4 inches long and therefore was required to be registered. Sharpe searched the jacket and discovered some papers but did not save the jacket or the papers or check them for ownership. There were no fingerprints on the gun. A subsequent search of the National Firearms Registration and Transfer Record indicated that the weapon was unregistered.
 
 
 5
 On the way to the magistrate's office, Simpson stated to Sharpe that the shotgun retrieved from the car belonged to a man popularly known as "Bunny" Snead. However, Simpson claimed that he did not know any of the men who were riding with him at the time he was arrested and the shotgun was seized.
 
 
 6
 On July 20, 1992, Simpson told the Wilmington Police that one of the passengers riding with him at the time of his arrest on July 18 was Bunny Snead. Simpson stated that he had been driving and was flagged down for a ride by Snead and two other men moments before he was pulled over. Simpson stated that Snead was in possession of a shotgun at the time and that Simpson asked Snead if the gun was legal. Simpson claimed that Snead wrapped the shotgun in a jacket and placed it under the passenger's seat.
 
 
 7
 Before Snead could be questioned about the shotgun by the Wilmington Police, he was killed in an unrelated shootout. Several witnesses to the shootout told Wilmington Police Officer Lloyd that Snead was in possession of a sawed-off shotgun when he was killed.
 
 
 8
 At trial, Simpson sought to introduce the testimony of Officer T.H. Lloyd, who would have testified that witnesses to Bunny Snead's death reported that Snead was in possession of a sawed-off shotgun when he was killed. The trial court did not allow this testimony on the grounds that it was hearsay and inadmissible character evidence.
 
 II
 
 9
 Simpson first contends that there was insufficient evidence presented to support his convictions. We disagree.
 
 
 10
 We must uphold a conviction if, taking the evidence and the reasonable inferences which can be drawn from the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty. See, e.g., United States v. Jones, 945 F.2d 747 (4th Cir.1991). We have previously discussed the sufficiency of evidence supporting convictions for possession of firearms. See United States v. Blue, 957 F.2d 106, 107-08 (4th Cir.1992); Jones, 945 F.2d at 749-50; United States v. Stanley, 597 F.2d 866, 870-71 (4th Cir.1979); United States v. Poore, 594 F.2d 39, 43 (4th Cir.1979). Conviction of the present offenses does not require actual possession of a firearm but can be satisfied by proof of constructive or joint possession. Blue, 957 F.2d at 107. "[T]o establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." Id. (quoting United States v. Ferg, 504 F.2d 914, 916-17 (5th Cir.1974)). See also Poore, 594 F.2d at 43.
 
 
 11
 In Blue, the defendant was riding in another person's car when it was pulled over. As the car was pulled over, the police officer saw the defendant's shoulder dip as if he were reaching under the seat. After the defendant was arrested for possessing heroin, a search of the car revealed a .38 revolver under the defendant's seat. The government's case rested on two pieces of evidence: the police officer's testimony that the defendant dipped his shoulder and the discovery of the firearm under the passenger seat where the defendant was sitting. 957 F.2d at 107-08. We found that, without more, the facts of the case "just barely" failed to sufficiently support a conviction. Id.
 
 
 12
 Sufficient evidence supports constructive possession in the present case. Unlike the defendant in Blue, Simpson was not merely a passenger in the car in which the shotgun was found; he was driving his wife's car, which had been consigned to his use and in which appellant had been driving when he was arrested on other occasions. Simpson admits that he had knowledge that the shotgun was present in the car. The shotgun was found underneath the front seat with the exposed stock nearly touching the driver's door. The shotgun did not protrude into the passenger's side of the seat or into the back seat floorboard. Thus, Simpson not only exercised dominion and control over the automobile in which he knew the shotgun was present but also was the only occupant of the vehicle with immediate access to the shotgun. Accordingly, we find that sufficient evidence supports Simpson's conviction for possession of the shotgun. See also Jones, 945 F.2d at 749-50 (evidence sufficiently supported conviction of possession where police found gun in defendant's bedroom and ammunition for the gun in defendant's pocket); Stanley, 597 F.2d 866, 870-71 (4th Cir.1979) (evidence sufficiently supported conviction for possession where defendant was driving vehicle in which one firearm was found and another was found in his home, and defendant admitted that he was a gun collector); Poore, 594 F.2d 39, 43 (4th Cir.1979) (evidence sufficiently supported conviction of possession where firearm was found in defendant's apartment and defendant's roommate told police that defendant had possessed the firearm). That others in the car may also have possessed the weapon is not inconsistent with a finding that appellant possessed the weapon. See Jones, 945 F.2d at 749-50.
 
 III
 
 13
 Simpson next claims that the district court abused its discretion when it excluded the testimony of Officer Lloyd, who would have testified that a number of witnesses saw Bunny Snead with a sawed-off shotgun at the time Snead was killed. The district court excluded the testimony on the grounds that it was an impermissible attempt to show character in order to prove conformity therewith and was inadmissible hearsay. The trial court did not abuse its discretion in excluding this evidence.
 
 
 14
 Simpson clearly offered Officer Lloyd's testimony of the eyewitnesses' statements to prove the truth of the matter asserted in the eyewitnesses' statements: that Snead possessed a shotgun on a later occasion. Simpson sought to prove Snead's possession of a different shotgun on an occasion subsequent to the events in question in order to show that Snead intended to possess this particular shotgun at the time of the present offense. The statements contained in Officer Lloyd's testimony are hearsay, and Simpson offered no grounds to support the admissibility of the hearsay statements at trial except to say that the statements were not hearsay.
 
 
 15
 Simpson now contends that the hearsay statements are admissible under the exception to the hearsay rule found in Fed.R.Evid. 803(24) for statements not fitting within any other exception, having "equivalent circumstantial guarantees of trustworthiness" and which are "more probative on the point for which [they are] offered than any other evidence which the proponent can procure through reasonable efforts." Simpson has not shown that the statements of the eyewitnesses to the shootout bear any circumstantial guarantees of trustworthiness. Additionally, Simpson has not shown that the testimony of the eyewitnesses whose statements he sought to introduce--clearly more probative of the facts surrounding the shootout than the officer's account of what the eyewitnesses told him--could not by reasonable efforts be introduced at trial. Therefore, the conditions required for the residual hearsay exception contained in Fed.R.Evid. 803(24) are not met. We need not consider whether or not such evidence was material or relevant, and we do not decide this question, as relevance was not made a ground for excluding the evidence at trial.*
 
 
 16
 The trial court properly excluded the testimony on the grounds of the hearsay rule. Therefore, we need not discuss whether the excluded testimony was permissible evidence of character or habit.
 
 IV
 
 17
 Finally, Simpson claims that his due process right to present evidence was violated by the Court's exclusion of Officer Lloyd's testimony concerning the statements of the eyewitnesses to Snead's death. The trial court's ruling concerns the exclusion of hearsay evidence and is reviewable only for an abuse of discretion.
 
 
 18
 Although an accused has the right to call and confront witnesses, he "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). A trial court's mechanical application of the hearsay rule may violate the defendant's due process rights where the excluded hearsay statement is against the penal interest of the declarant and has sufficient indications of trustworthiness. Chambers, 410 U.S. at 298-303. See United States v. MacDonald, 688 F.2d 224, 232 (4th Cir.1982), cert. denied, 459 U.S. 1103 (1983). See Fed.R.Evid. 804(b)(3). We have held that the trial court does not violate the defendant's due process rights where the circumstances do not indicate the reliability of the excluded hearsay statement. McDonald, 688 F.2d at 233; United States v. Hinkson, 632 F.2d 382, 385-86 (4th Cir.1980).
 
 
 19
 The district court properly excluded the hearsay statements of the eyewitnesses to Snead's death, as the statements did not fall within any exception to the hearsay rule. It is clear that the hearsay statements were not against the penal interests of the declarants and had no significant indications of trustworthiness. Therefore, we find that Simpson's due process rights were not denied even if the evidence may possibly have been material and relevant.
 
 V
 
 20
 For the foregoing reasons, the judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 *
 Indeed, the same facts--that Snead possessed a different shotgun on a later occasion--might be equally probative of the fact that the shotgun recovered from Simpson's car was not Snead's shotgun