Cowin, J.
The defendant, Petra Valerio, has been charged in several indictments with offenses relating to trafficking and distribution of controlled substances as well as possession of a firearm without a firearm identification card (G.L.c. 269, §10(h)). She has filed a motion to suppress all evidence seized as a result of a search on April 9, 1996 of a 1989 Mitsubishi Mirage, Mass. Reg. 818XVM, automobile which search resulted in the seizure of heroin, cocaine, a handgun and bullets. The defendant claims that the search was conducted without a warrant, without consent and thatitwas not supported by probable cause. A hearing was held on this motion on March 13, 1997, in which two witnesses testified: Claudia Grossman, a Brook-line Housing Authority site manager, and Lauren Kane, a detective for the Medford Police assigned to a Federal Task Force.
*600 After the hearing and an evaluation of the evidence presented, including the credibility of the witnesses, I make the following findings and rulings.
FINDINGS OF FACT
On April 10, 1996, officers of a Federal Task Force operating out of Boston obtained and executed a search warrant for the premises of Petra Valerio at 348 St. Paul Street, Apartment #6, Brookline. Ms. Valerio’s apartment was on the third floor in a building in a Brookline Housing Authority development. The building faces onto Pleasant Street. (Pleasant Street is parallel to St. Paul Street.) Several police officers searched the apartment of the defendant at the time of execution of the warrant. Officer Lauren Kane was assigned to the rear door of the apartment building. The rear door was made of steel and had three steps leading out to a rear parking lot. The parking lot ran the length of the building in which Valerio lived and was divided into eighty numbered spaces. There was a fence on one side of it but not on another side.
During the execution of the search warrant, the police searched a 1989 Mitsubishi Mirage, Mass. Reg. 818XVM, (the car) which was registered to Ms. Valerio. In the car were found a .25 caliber handgun, approximately 300 bags of heroin and four bags containing a small amount of cocaine.
The car was parked in the lot behind 348 St. Paul Street about twenty-five feet from the rear exit door of Ms. Valerio’s building. It was parked between spaces number 8 and 9 facing in toward the fence with the registration number in back facing the rear of St. Paul. The car had been observed during the winter of 1996 by Task Force officers during their surveillance of drug buys but Officer Kane did not recall if the car had been used in any drug buys.
The parking lot was owned and managed by the Brookline Housing Authority. Only residents of the Authority were allowed to park in the lot. Occasionally, guests of the residents were permitted to park in the lot. A towing company removed unauthorized vehicles. Each space in the lot was numbered and the practice and policy of the Brookline Housing Authority was to assign the tenants in the units individual marked parking spaces. Sometimes parking permits were given on an annual basis; other parking permits were given on a temporary or monthly basis.[1] The permits were cardboard and had holes in them so that they could be hung on the inside rear view mirror of the car and could be seen from the outside.
The records of the Housing Authority contained a permit which had been issued to defendant Valerio for space number 68 but this permit expired sometime in 1995. Also in the Housing Authority records was a xerox copy of the defendant’s car registration which had a red marking on it that said: “#9,” indicating to Ms. Grossman, the manager, that a temporary parking permit had been issued to the defendant for space number 9. However, the manager did not know the time period for which this permit applied.[2] A parking permit found in the defendant’s vehicle during the search indicated that Valerio had a permit for space number 4 which permit expired on April 9, 1996, one day prior to the search.[3] No evidence was presented as to whether or what parking permit, if any, existed for the defendant’s car at the time of the search warrant.
The evidence does not indicate that the defendant controlled the area in which her car was located. The evidence established only that the defendant had control of parking lot number 9 for some unidentified period of time and that she controlled parking lot number 4 until April 9, 1996, the day before the present search. No evidence indicated that she controlled parking spaces 8 or 9 (or any other parking space) on the day of the instant search. Thus, as a factual matter, the Commonwealth has not persuaded the Court that the defendant exercised control over either or both of the spaces in which her car was parked at the time of the search.
DISCUSSION
Initially, there is a question in this case as to which party bears the burden of proof, see Commonwealth v. Antobenedetto, 366 Mass. 51 (1974). The Commonwealth maintains that the search was supported by a warrant; the defendant contends that the search was a warrantless one. The outcome of the case does not turn on a resolution of this issue.
Commonwealth v. Signarme, 404 Mass. 400 (1989), established that the scope of a warrant authorizing the search of a particularly described residence includes any automobiles owned or controlled by the owner of the residence and located within the curtilage of the premises at the time the warrant is executed. Id. at 403. The Court stated that: ”[i]t is a well-settled principle under both Federal law and the law of other jurisdictions that the scope of a warrant authorizing the search of a particularly described premises, includes automobiles owned or controlled by the owner thereof which are found on the premises.” Id. In Signorine, the Court cited several Federal cases which permitted searches of automobiles parked in an attached garage, in a carport adjacent to a rear apartment and even of an automobile parked on a lot next to a cabin, when the warrant authorized a search of both the cabin and the lot. The critical factor in all these cases is that the defendant controlled the area on which the automobile was located in the same sense in which the defendant controlled the residence.
No Massachusetts case, however, has been called to the Court’s attention which has decided the precise issue presented here: whether a car in a parking space of an apartment building is included 'within the curtilage of the premises (the apartment) for which the warrant is issued. Several cases from other jurisdictions have considered the issue and are instructive. Virtually all these cases have concluded that such a *601 search is not within the curtilage. See, for example State of Nevada v. Harnisch (1977 WL 35480, *1 (Nev.) (No. 27347, Supreme Court of Nevada, Jan. 30, 1997) (while police executing warrant for search of defendant’s apartment, defendant arrived at the apartment and parked his car at his assigned parking space; nevertheless, parking space not within curtilage of apartment); Rogers v. State, 543 So.2d 719 (Ala. 1988) (evidence did not show that parking area in front of apartment building fell within curtilage of apartment described in search warrant or that it was in area exclusively controlled by the apartment’s owner, or that owner had expectation of privacy in motor home parked in the parking lot; accordingly, search warrant for apartment did not authorize search of motor home parked fifty feet from the apartment in the lot, despite fact that an electrical extension cord was “hooked” to the back of the motor home from a front window of the apartment); U.S. v. Stanley, 597 F.2d 866 (4th Cir. 1979) (six or seven-space common area parking lot of mobile home park with no assigned spaces in which defendant’s automobile was parked not within curtilage of his mobile home); State v. Coburne, 518 P.2d 747 (10 Wash.App. 298 (1973)) (vehicle parked in alley parking lot available to all users of apartment not within curtilage); United States v. Cruz Pagan, 537 F.2d 554 (1st Cir. 1976) (underground parking garage of condominium not part of curtilage of defendant’s apartment); Mahar v. Georgia, 223 S.E.2d 204 (137 Ga.App. 116 (1975)), cert. denied, Mahar v. Georgia, 429 U.S. 923 (1976) (truck in parking lot 150 feet from defendant’s apartment not within curtilage). Cf. Joyner v. State, 303 So.2d 60 (Fla.Dist.Ct.App. 1974) (holding that yards, courtyards, driveways and parking areas automatically used in common by occupants of apartment houses and condominiums are part of curtilage of apartment or condominium and automobile parked on such common area and identified by use of keys obtained from apartment’s or condominium’s occupant is a part of that curtilage; however, the vehicle in question was parked in the designated space for the apartment to be searched).
These cases have generally analyzed the issue of whether the parking area is within the curtilage in reference to four factors: (1) the proximity of the area claimed to be the curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. United States v. Dunn, 480 U.S. 294, 301 (1984). Applying these factors to the instant case, the parking lot was three floors down from the defendant’s apartment and about twenty-five feet from the rear door of said building; the parking area was not within an enclosure surrounding the apartment unit: the space was apparently open to public view and was not used for “intimate” household or domestic activities, see Dunn, 480 U.S. at 302-03; and, finally, there was no evidence that Valerio did anything to protect the space from public observation. Accordingly, the parking space in question was not so connected to the apartment that it should be considered within the curtilage for the protection of the Fourth Amendment.
The Commonwealth argues that if the space in which Ms. Valerio’s car was parked was a space assigned to her the car should be considered as within the curtilage of her apartment. However, I have not found that the car was parked in a space so assigned to Ms. Valerio and, based upon the above cases, I reject the legal conclusion as well.
Since I have concluded that the parking space was not within the curtilage of the defendant’s apartment, the police needed a warrant to search the car unless another exception to the warrant requirement is applicable.[4] The plain view doctrine does not apply because the trunk presumably was closed. (There was no evidence otherwise.) The automobile exception to the warrant requirement does not apply: even if exigent circumstances could be presumed (because the defendant apparently was not arrested) there must be probable cause to believe that the evidence of a crime was contained within the vehicle and no such evidence was presented. Nor was there any evidence that this was a search incident to arrest.
As the parking space was not within the curtilage of the apartment and no other exception to the warrant requirement is applicable, the search in this case was invalid.[5]
ORDER
For all of the above reasons, the defendant’s motion to suppress is ALLOWED.

Here was no evidence regarding why or when temporary permits as opposed to annual permits were sometimes issued.

The testimony of Ms. Grossman, the manager, was very vague as to the defendant’s parking pass situation. Ms. Grossman had been the manager of the site for only a short time and was uncertain of the meaning of many of the parking records prior to her assuming the position. No evidence was presented from the manager who actually made the records in question or assigned the parking spaces during the time in issue.

This parking permit itself may well have been improperly obtained if the police were not permitted to search the car. See discussion infra.

The Commonwealth has not sought to justify the search on any of these grounds.

My conclusion is the same regardless of whether the defendant or the Commonwealth has the burden in this case.