402 So.2d 1216 (1981)
STATE of Florida, Appellant,
v.
David Allen HAUGEE, Appellee.
No. 80-201.
District Court of Appeal of Florida, Fifth District.
July 22, 1981.
Rehearing Denied September 2, 1981.
Jim Smith, Atty. Gen., Tallahassee, and Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, for appellant.
Joseph A. Rosier, Altamonte Springs, for appellee.
PER CURIAM.
An undercover agent, while making a drug buy from Sam Andrews at a single family dwelling occupied by Sam Andrews and Janice Peeler, was asked by Sam if the agent was interested in buying a large quantity of drugs. When the agent indicated affirmatively, he was told to come back any time after midnight as Sam was expecting another 20,000 Quaaludes then. Based on this as probable cause, a search warrant was issued authorizing search of the private dwelling[1]
... together with the yard and curtilage thereof, any and all outbuildings and vehicles thereon... .
When, after midnight, the warrant was executed appellee Haugee was present in the house and his truck was in the yard. Appellee was searched, the keys to his truck were obtained from him and the truck was searched. Contraband was found within a briefcase in the truck. Citing Dunn v. State, 292 So.2d 435 (Fla. 4th DCA), cert. dismissed, 296 So.2d 47 (Fla. 1974), the trial court suppressed the contraband found in the briefcase in the truck. We reverse.
In Alexander v. State, 108 So.2d 308 (Fla. 1st DCA 1959), where a search warrant did not specifically authorize the search of vehicles, the search of an automobile parked in the yard of the dwelling was upheld and Judge Wigginton, specially concurring, observed:
it has been uniformly held that where a search warrant authorizes officers to search a described building, together with the yard or curtilage on which the building is located, parked automobiles or other vehicles found in the yard or within the curtilage are proper subjects of *1217 search under the warrant. It has accordingly been held that evidence obtained by the search of automobiles or vehicles under such circumstances is admissible to prove the offense with which the defendant is charged.

Id. at 309.
In Joyner v. State, 303 So.2d 60 (Fla. 1st DCA 1974), cert. dismissed, 325 So.2d 404 (Fla. 1976), it was held that information that contraband was "at" a certain described dwelling authorized the search warrant for the dwelling and the curtilage thereof. Neither the affidavit nor the warrant referred to any automobile and the dwelling was an apartment in a multi-unit complex. The court held the warrant authorized a search of an automobile located in a common parkway serving the entire complex where the automobile was identified as connected with the searched apartment merely because keys to it were obtained from the occupant of the specifically described apartment.
In Stipp v. State, 355 So.2d 1217 (Fla. 4th DCA), cert. denied, 364 So.2d 893 (Fla. 1978), the affidavit referred to certain vehicles but the warrant expressly authorized search only of a described house and the curtilage thereof. Again keys to vehicles were obtained from the house and the vehicle searched. The court held:
We think the search of these vehicles was authorized under the warrant since they were in the curtilage described and under the control of the suspects in the house. 355 So.2d at 1218.
In Dunn v. State, 292 So.2d 435 (Fla. 4th DCA), cert. dismissed, 296 So.2d 47 (Fla. 1974), the search warrant described a single dwelling. In suppressing evidence resulting from a search of a van owned by the occupant of the dwelling and parked in the driveway, the Fourth District Court of Appeal in a two-one decision attempted to distinguish Alexander primarily because in Alexander the vehicle keys were obtained from the house and the Dunn majority believed "some such evidence necessary in order to authorize the search of a vehicle parked even within the `curtilage.'" Id. at 436. Dunn is merely referred to in Stipp and appears to be out of step with Alexander, Joyner, and Stipp. However, in requiring some evidence of a connection between the premises and the vehicle, Dunn recognizes that the obtaining of keys to the vehicle from the house described in the warrant is sufficient. Where, as in Joyner, the vehicle is in the common area of a multi-unit complex only one unit of which is described in the warrant, some connection of the vehicle to the dwelling unit is reasonable and necessary in order to extend to the vehicle the authority given by the warrant to search the dwelling unit.
In this case a probable cause for the warrant was the reasonable belief that contraband drugs were going to be somewhere in or around this single family dwelling after midnight. As there were no details as to how the contraband drugs were going to arrive there or where the drugs going to be located after they arrived, the search warrant was not overbroad in permitting a search of all places where the contraband could be hidden in the dwelling and its curtilage, including all buildings and vehicles thereon.
Taking arguments from two cases from other jurisdictions cited in Dunn, appellee Haugee argues that he and his vehicle were not named or described in the warrant and were not the "target" of the search but were "strangers to the process." While this colorful language is designed to attract supporters, it actually is not in point. An arrest warrant is directed at people. Search warrants are directed at things which are believed to be at places. The reference to ownership or to persons in a search warrant is material only as a part of a description of a place or when the object to be seized may be located on, or in possession of, a person.[2] In a search warrant *1218 authorizing the seizure of contraband, the reference to ownership is immaterial and the reference to persons is material only as the description, or part of the description, of a place where the contraband is or may be located. The object or "target" of the search and seizure here and in other drug cases is the contraband and the place where the affidavit reasonably indicates the contraband is, or will be, located without regard to ownership.
If courts exempt unknown and hence unnamed persons' property from a valid warrant for a premises location, then most contraband can be kept secure from discovery by being kept on the premises but within vehicles, suitcases or other opaque containers owned by persons other than the regular known occupants of the premises. It is in the nature of such things that drug dealers are not specific when disclosing information that may be hazardous to their activities, such as exactly where on a premises contraband is kept or will in the future be kept. Even when an unwary drug abuser slips and discloses an exact location he does not guarantee that he will not relocate it if circumstances dictate. Law enforcement did the best it could do in this case. It should be sufficient.
Since the warrant did not exceed the probable cause upon which it was based and the warrant expressly authorized the search of vehicles on the curtilage to the described single family dwelling, we uphold the search. The suppression order of the trial court is
REVERSED.
SHARP and COWART, JJ., concur.
ORFINGER, J., dissents with opinion.
ORFINGER, Judge, dissenting:
I must respectfully dissent. The majority opinion authorizes and encourages "dragnet" search warrants by permitting the search of a vehicle belonging to a stranger and not shown to have any connection to the premises described in the search warrant, except that the person and the vehicle are on the premises when the search warrant is executed. Article I, section 12 of the Florida Constitution says that "no [search] warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized ... and the nature of the evidence to be obtained." The fourth amendment to the United States Constitution contains a similar proscription.
The affidavit supporting the search warrant described a transaction with and premises owned and occupied by Sam Andrews and Janice Peeler. There is nothing in the affidavit which would lead one to believe that someone other than those named in the search warrant would come on the premises to deliver any contraband, so there is no probable cause shown to believe such might occur. The affidavit and warrant are more than adequate to support a search of Sam or Janice's property, but do not present any probable cause which would support a search of a complete stranger to the premises. Until the search of appellee's vehicle was made, the officers had no knowledge or suspicion that he was or would be involved in this drug transaction. I agree that strangers cannot necessarily be identified by the officer, but if the officer had any reason to believe that contraband was going to be brought onto the premises by someone unknown, he could have said so in his affidavit, and thus show probable cause for searching a stranger on the premises at the time. When the search warrant was executed, there were four vehicles in the curtilage, including appellee's.
In this case, I think the answer to the question of whether the search of appellee's vehicle can be supported depends on whether, under these circumstances, the search of the appellee would have been justified, and on the basis of Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the search of the appellee under these circumstances is unjustified.

*1219 It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, a person's mere propinquity to others independently suspected of criminal activity does not, without more give rise to probable cause to search that person... . Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to the person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. (emphasis supplied).
100 S.Ct. at 342.
Consequently, the warrant here did not authorize the search of Haugee merely because he was found on the premises, and neither could it without more authorize a search of his vehicle.[1]
Despite my deep respect for Judge Wigginton, the quotation alluded to by the majority from his specially concurring opinion in Alexander v. State, 108 So.2d 308 (Fla. 1st DCA 1959), was not the opinion of the court. Additionally, in Alexander, there is nothing in the opinion to indicate that the vehicle belonged to anyone other than the owner of the premises. In Joyner v. State, 303 So.2d 60 (Fla. 1st DCA 1974), the vehicle in question was parked in the spot designated for the apartment to be searched and could be identified as belonging to the owner of that apartment. In Stipp v. State, 355 So.2d 1217 (Fla. 4th DCA 1978), cert. denied, 364 So.2d 893 (1978), the court upheld the search of the vehicle in the curtilage because the affidavit described certain vehicles which were believed to be leased to the suspects, and the court found that the vehicles were in the control of the persons named in the warrant.
In Dunn v. State, 292 So.2d 435 (Fla. 4th DCA 1974), the court specifically addressed the propriety of the search of a vehicle in the curtilage of the premises identified in the warrant, but not otherwise connected to the premises, and in holding such search invalid, said:
The State relies upon the case of Alexander v. State, 108 So.2d 308 (1st DCA Fla. 1959). There are significant differences between Alexander and the case at hand, we believe. In Alexander, like the case here, the warrant referred to the premises and the automobile was located on the premises, but Alexander does not make it clear how many vehicles were on the premises. Also, in Alexander, the arresting officers were in the process of making their search when they rocked the car in question from side to side. As they did so, a gurgling sound emitted from the trunk. (This was a moonshine case.) The officers procured a set of automobile keys from the kitchen table inside the house, opened the trunk of the car and found the contraband in question. In the case at hand, there was no such evidence to connect the vehicle in question with the premises and we believe some such evidence necessary in order to authorize a search of a vehicle parked even within "the curtilage".
Id. at 436.
The same significant difference exists here. On a motion to suppress, the judgment *1220 of the trial court on probable cause comes to us with a presumption of correctness, G.J.S. v. State, 393 So.2d 14 (Fla. 5th DCA 1980), and in my opinion, the trial court was correct in granting the motion. The majority opinion is in apparent conflict with Alexander, Joyner and Stipp, and is in specific conflict with Dunn, and it should be so certified to the Supreme Court so that the conflict may be resolved.
NOTES
[1] Sec. 933.18(5), Fla. Stat. (1979), authorizes a search warrant for an occupied private dwelling when the law relating to narcotics or drug abuse is being violated therein.
[2] Section 933.05, Florida Statutes (1979), requires the warrant to name or describe "the person, place or thing to be searched... ." Section 933.07, Florida Statutes (1979), provides the warrant is "to search the property described in the warrant or the person named... ."
[1] See Ybarra, 100 S.Ct. at 343, fn. 4, where the court observes:

The Fourth Amendment directs that "no warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." Thus, "open-ended" or "general" warrants are constitutionally prohibited. See Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920; Marshall v. Barlow's Inc., 436 U.S. 307, 311, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305; United States v. Chadwick, 433 U.S. 1, 7-8, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538; Stanford v. Texas, 379 U.S. 476, 480-482, 85 S.Ct. 506, 509-510, 13 L.Ed.2d 431. It follows that a warrant to search a place cannot normally be construed to authorize a search of each individual in that place. The warrant for the Aurora Tap Tavern provided no basis for departing from this general rule. Consequently, we need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs. (emphasis supplied).