GREEN, Judge.
The defendant, Richard Lowe, appeals the trial court’s judgment and sentence adjudicating him guilty of possession of methamphetamine, possession of cannabis, and possession of drug paraphernalia. The defendant was sentenced to concurrent sentences of thirty days in the county jail on each misdemeanor count and three years of probation on the charge of possessing methamphetamine. The probationary sentence was conditioned on Lowe’s serving thirty days in the county jail concurrently with the misdemeanor sentences. We affirm.
Lowe presents two points on appeal with respect to his motion to suppress all evidence seized,[1] including methamphetamine from his person and marijuana from his vehicle. Lowe asserts that the state failed to meet its burden of proof in order to justify the searches within the meaning of the Fourth Amendment to the Constitution of the United States. Lowe further states that there was no reason to believe he was engaged in criminal activity so as to justify search of his vehicle.
The facts are that Deputy Keith Summer of the Polk County Sheriffs Office applied for a search warrant to search the rural residence occupied by one Bruce Rhoden. The affidavit alleged that Polk County sheriffs deputies had conducted two different controlled drug buys of methamphetamine from Bruce Rhoden at the subject residence within five days before applying for the search warrant. On each occasion, the confidential informant and the vehicle he was using were searched for controlled substances by the control deputy, and immediately, while under surveillance, the confidential informant drove his vehicle to Bruce Rhoden’s residence and made a purchase of methamphetamine from Bruce Rhoden. The methamphetamine from the two buys had a combined weight of six grams. On the first occasion, the confidential informant was in the residence for approximately fifty-five minutes, and on the second occasion, he was in the residence for approximately thirty minutes.
The confidential informant related to his control officer that Bruce Rhoden routinely carried a hand gun concealed on his person and that a named individual, known to him as a neighbor of Rhoden’s, guarded the premises with an SKS assault rifle. A different confidential informant of the control officer also stated that Rhoden’s residence was guarded by an individual using an assault rifle with a thirty-round magazine. The confidential informant who made the buys reported to the control officer that Bruce Rhoden was in possession of approximately one pound of methamphetamine at the subject residence within the aforementioned five-day period.
A search warrant was duly issued. The provision of the warrant critical to this appeal is as follows:
[T]o enter and search the afore described place and premises together with the yard and curtilage thereof, and any and all outbuildings and vehicles thereon, and any persons residing therein and any other person thereon reasonably believed to be connected with said illegal activity.
The warrant was executed on April 1, 1997, at which time deputies forcefully entered the residence immediately after announcing their presence. Although the evidence concerning Lowe’s entry to Rho-den’s property was disputed, the trial judge concluded that Lowe drove onto and stopped on a driveway running in close proximity to the side of the house while the search was being conducted. Deputy Robert Clayton of the Polk County Sheriffs Department walked up to Lowe’s vehicle’s driver’s side window and made contact with him. Deputy Clayton asked *179 Lowe why he was there, and he responded that “he was there to visit a friend.” Deputy Clayton explained to Lowe that a search warrant was being served and, due to the fact that he drove onto the premises described in the warrant as the area to be searched, he and his vehicle were subject to being searched. Deputy Clayton searched Lowe’s person and retrieved a small amount of methamphetamine from his pant’s pocket. Deputy Bell of the Polk County Sheriffs Department then walked up and assisted Deputy Clayton in searching Lowe’s vehicle. A small bag of cannabis was found in the vehicle. There is no dispute that Lowe’s vehicle was within the “yard and curtilage” description of the search warrant. Deputy Clayton testified that there was a lot of traffic going in to buy drugs; otherwise, there was no evidence that Lowe was involved in criminal activity. See Bergeron v. State, 583 So.2d 790 (Fla. 2d DCA 1991).
We see no difference in Lowe and his vehicle being on the premises when the deputies arrived as opposed to his driving onto the premises to visit his friend after the arrival of the officers. We recognize that the search of Lowe’s person, which netted the methamphetamine, may not have been justified under the terms of the warrant since the officer had no sound reason to believe he was connected to the illegal activity. However, either way, it is certain that the search of his person was inevitable if the search of his vehicle was lawful. See State v. Musselwhite, 402 So.2d 1235 (Fla. 2d DCA 1981); State v. Duggins, 691 So.2d 566 (Fla. 2d DCA 1997).
The facts in the instant case are similar to those considered by the Fifth District in State v. Freeman, 673 So.2d 139 (Fla. 5th DCA 1996). The search warrant in Freeman was issued after a confidential informant made two controlled drug buys at the subject residence. Freeman drove his vehicle onto the premises approximately twenty minutes after the search commenced, and an officer drew his gun in order to stop Freeman from driving away from the premises. Although it was believed that Freeman’s automobile had been previously seen on the premises and Freeman had been reported to be a resident there, the court held:
In addition, we hold that the police properly detained Freeman when he entered the premises. State v. Thomas, 603 So.2d 1382, 1384 (Fla. 5th DCA 1992). Further, this court and other courts have not required a nexus between any vehicle found on the property and the alleged illegal activity when the search warrant authorizes the police to search any vehicle within the curtilage of the premises. State v. Booream, 560 So.2d 1303 (Fla. 2d DCA 1990); Richardson v. State, 547 So.2d 323 (Fla. 5th DCA 1989); State v. Haugee, 402 So.2d 1216 (Fla. 5th DCA 1981), rev. den., 415 So.2d 1360 (Fla.1982); but see Miller v. State, 516 So.2d 1118 (Fla. 1st DCA 1987). Given that the authority to search the vehicle was explicitly within the search warrant a final, and conclusive, authority for doing so exists.
Id. at 141.
The First District in Miller reached a contrary result concerning the search of Miller and his vehicle, asserting a reliance on the earlier case of Simmons v. State, 491 So.2d 1307 (Fla. 1st DCA 1986). The court in Miller and Simmons reached opposite results based on similar search warrant provisions that authorized the search of “premises and curtilage thereof.” Apparently, the warrants in those cases did not specifically authorize the search of vehicles found within the “yard and curti-lage,” as in the instant case. For this reason, we see no necessity of declaring conflict with Miller.
We therefore find that because the officers were legally entitled to search Lowe’s vehicle pursuant to the warrant, the search of Lowe’s person was transformed into a valid search pursuant to the “inevitable discovery” doctrine. Evidence *180 that is obtained pursuant to unconstitutional police procedures may still be admissible if it is shown that the evidence would ultimately have been discovered by legal means. See Duggins. Once the deputies searched Lowe’s vehicle and found the cannabis, they were authorized to search Lowe’s person pursuant to the “search incident to arrest” exception. The methamphetamine would then have been discovered. We therefore affirm the trial judge’s suppression ruling and the sentences imposed.
Affirmed.
SALCINES, J., Concurs.
BLUE, A.C.J., Dissents with opinion.

. The motion did not address the roach clip, which was the basis for the possession of drug paraphernalia charge.