# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

───────────

No.  08-1706

───────────

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　Plaintiff - Appellee,　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　District of Nebraska.
Luis F. Martinez-Cortes,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　Defendant - Appellant.　　　 *

───────────

Submitted: January 13, 2009
Filed:   May 22, 2009

───────────

Before LOKEN, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.

───────────

LOKEN, Chief Judge.

Luis Martinez-Cortes entered a conditional plea of guilty to possession with intent to distribute more than fifty grams of methamphetamine.  He appeals the district court's[1] denial of his motion to suppress, arguing that police officers violated his Fourth Amendment rights when they stopped and searched the vehicle that Martinez-Cortes was backing down the driveway of a residence as police arrived to execute a search warrant.  Reviewing the court's factual findings for clear error and ultimate

───────────

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the Report and Recommendation of the Honorable F.A. Gossett, United States Magistrate Judge for the District of Nebraska.

Fourth Amendment questions *de novo*, we affirm.  See United States v. Olson, 262 F.3d 795, 798 (8th Cir. 2001) (standard of review).

## I.  Background

On October 3, 2006, Sheriff's Investigator Joe Benak obtained a warrant to search 7510 Trumble Avenue, a single family dwelling in Omaha, for controlled substances, drug paraphernalia, and evidence of drug crimes.  The warrant expressly included "the person of William J. Baber . . . any vehicles registered to William J. Baber . . . and/or any curtilage located at 7510 Trumble Avenue."  The warrant authorized a no-knock entry because "the presence of a rifle at the residence could present danger" to the executing officers.

At 7:45 p.m., officers proceeded to 7510 Trumble Avenue in three vehicles to execute the warrant.  As they turned onto Trumble, they saw a tan Ford Excursion backing down the driveway of the target residence, a vehicle they had seen at the residence during prior surveillance.  A police van parked in front of 7510, discharging officers who proceeded to the house to execute the warrant.  Meanwhile, Corporal Fred Bishop stopped his police cruiser in front of the Excursion, blocking its ability to leave, and trained his emergency lights and spotlight on the vehicle.  Deputy Sheriff Brian Jarrett parked the third (unmarked) police vehicle directly behind the cruiser. In the spotlight, the officers could see two individuals they could not identify in the front seats of the Excursion.

Jarrett, Benak, and Bishop approached the Excursion, weapons drawn, and ordered the occupants to put the vehicle in park and show their hands.  As the officers drew near, they saw that the front seat occupants were Hispanic males, not William Baber, who is white, but they could not see if anyone was in the rear of the Excursion. Deputy Jarrett observed both occupants moving their arms and the driver, later identified as Martinez-Cortes, looking towards the middle console and moving as if

-2-

to shove something between the center console and his right leg. After several more demands, Martinez-Cortes put the Excursion in park and both occupants showed their hands. The officers ordered them out of the Excursion and told them to lie on the ground, where they were handcuffed and asked for identification. Martinez-Cortes provided a Nebraska identification card. The passenger had no identification but gave his name and date of birth.

Deputy Jarrett next called for a routine check for wants and warrants. Jarrett arrested Martinez-Cortes when the dispatcher advised that he had an outstanding misdemeanor warrant and his driving privileges had been revoked and suspended. A search of the Excursion then yielded a small baggy containing two grams of methamphetamine near the center console, a baggy containing 5.1 grams of methamphetamine in a zipped compartment near the driver's side back door, and three baggies containing 78.6 grams of methamphetamine inside a blue-gray console on the floor behind the driver's seat. This prosecution followed.

## II. Discussion

Martinez-Cortes argues that the initial stop of the Excursion was unlawful because he committed no traffic violation and the officers had no reasonable suspicion criminal activity was afoot, that his detention was unreasonably extended for a records check, and therefore that his subsequent arrest and search of the vehicle were unlawful. Like the district court, we disagree.

Police officers must have a constitutionally reasonable basis for stopping a motor vehicle. The critical question is, "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (quotations omitted). In making reasonable-suspicion determinations, reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the

detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). Here, we conclude that police officers arriving to execute the warrant to search 7510 Trumble Avenue and William Baber had three valid reasons to stop and at least briefly detain the departing Excursion and its occupants.

First, the search warrant authorized the officers to search, not only the residence, but also vehicles registered to Baber and vehicles located within the property's curtilage. When they arrived to execute the warrant, the officers saw a vehicle previously seen at that location backing down the driveway. It had just left the curtilage, where it could be searched. It might be registered to Baber, in which case it could be searched wherever found. Thus, the officers had reason to believe that the warrant authorized search of the vehicle, and it was reasonable to stop the vehicle to determine whether it should be included in the warrant search.

Second, it was reasonable to stop the Excursion to determine whether any occupant was a resident of 7510 Trumble Avenue. The warrant authorized searching the person of William Baber. That gave the arriving officers reason to stop the Excursion to determine whether Baber was riding or hiding in the rear of the vehicle.[2] Moreover, the Supreme Court has squarely held "that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981). In Summers, the Court concluded it was constitutionally reasonable to detain a person descending the front steps while the warrant search was conducted. Later cases have confirmed that this authority to forcibly detain during the warrant search extends to all occupants of the premises, not just the owner or the subject of the warrant. See L.A. County v. Rettele, 550 U.S.

---

[2]The district court's finding that the officers could not tell whether Baber was in the vehicle before they made the stop was not clearly erroneous.

-4-

609, 613-14 (2007); Muehler v. Mena, 544 U.S. 93, 98-99 (2005). Detaining occupants while a house is being searched "prevent[s] flight in the event that incriminating evidence is found" and facilitates "the orderly completion of the search." Summers, 452 U.S. at 702-03. Thus, the officers acted reasonably in detaining Martinez-Cortes while they conducted a records check that might reveal whether he was an occupant of 7510 Trumble Avenue. See United States v. Gill, 290 F. App'x 965, 967 (8th Cir. 2008) (unpublished) (reasonable to stop a person exiting residence about to be searched who might be a resident).

Third, stopping the Excursion was justified by the strong interest in protecting the safety of officers engaged in the inherently dangerous activity of executing a warrant to search for narcotics. See Rettele, 550 U.S. at 614; Summers, 452 U.S. at 702. The officers had sufficient evidence that firearms were on the premises to convince a magistrate to issue a no-knock warrant. It was dark outside, and a vehicle previously seen at the residence was backing down the driveway as the officers approached. The Excursion was close enough to the residence that "an armed individual inside could pose a danger to officers on the scene." United States v. Jones, 471 F.3d 868, 875 (8th Cir. 2006), cert. denied, 127 S. Ct. 2953 (2007); see Maryland v. Buie, 494 U.S. 325, 333 (1990). Moreover, had the officers allowed the Excursion to drive away, they faced the risk that its occupants would use a cell phone to warn those in the house of the imminent search, thereby undermining the protections of a no-knock entry. "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Summers, 452 U.S. at 702-03.

These inherent risks to officer safety were magnified when the occupants of the Excursion did not promptly comply with orders to put the vehicle in park and show their hands, and Martinez-Cortes moved his arms as if to hide something between his leg and the car's console. These furtive actions gave the officers reason to suspect, indeed, probable cause to believe that criminal activity was afoot, and that the

occupants might be a risk to officer safety unless detained while the warrant search was completed. This justified the officers' decisions to order Martinez-Cortes out of the Excursion, see United States v. Stachowiak, 521 F.3d 852 (8th Cir. 2008); United States v. Spotts, 275 F.3d 714, 719 n.2 (8th Cir. 2002); to handcuff him, see United States v. Walker, 555 F.3d 716, 721 (8th Cir. 2009); to run a check for outstanding wants and warrants, see United States v. Tuley, 161 F.3d 513, 515 (8th Cir. 1998); and to search those areas of the vehicle where a weapon or contraband might be hidden, see United States v. Bell, 480 F.3d 860, 864 (8th Cir. 2007).[3]

For the foregoing reasons, the judgment of the district court is affirmed.

_____

_____

[3]Because Martinez-Cortes was secured outside the Excursion and then arrested for an undescribed misdemeanor warrant, the Supreme Court's recent decision in Arizona v. Gant, No. 07-542 (Sup. Ct. Apr. 21, 2009), severely limits the officers' authority to conduct a warrantless search of the vehicle *incident to his arrest*. However, the warrant to search vehicles in the curtilage of 7510 Trumble Avenue combined with the occupants' furtive actions when the Excursion was stopped gave the officers probable cause to believe that contraband or other evidence of drug crimes would be found in the stopped vehicle, which was an independent basis for conducting a warrantless search of the vehicle. See United States v. Ross, 456 U.S. 798 (1982), cited with approval in Gant, slip op. at 13.