62 So.3d 1218 (2011)
Bryon Keith WHEELER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D10-1994.
District Court of Appeal of Florida, Fifth District.
June 10, 2011.
*1219 James S. Purdy, Public Defender, and Christopher S. Quarles, Assistant Public Defender, Daytona Beach, for Appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Megan Saillant, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
The sole issue presented here is whether Appellant's vehicle was located within the curtilage of a residence that was the target of a search warrant. The trial court concluded that it was because the vehicle was partially overlapping a portion of the driveway to the residence, and accordingly, denied Appellant's motion to suppress a firearm and drugs located within the vehicle. We conclude that the vehicle was not within the curtilage of the residence, and accordingly, we reverse.
After conducting a controlled purchase of drugs, the police obtained a search warrant for the single family residence. The warrant authorized the search of any vehicle located within the residence's "curtilage." Appellant, who had no connection to the investigation or the residence that was the target of the search, happened to be parked in his car in front of the residence with a female companion at the time the warrant was executed. The residence was located on a city *1220 street adjacent to a paved road. It was surrounded by a chain-link fence with an opening for ingress and egress through a dirt driveway. Appellant was parked outside the chain link fence, parallel to the road within the city right-of-way very close to the paved portion of the right-of-way. Part of Appellant's vehicle was parked over the driveway portion of the right-of-way impeding, but not blocking, ingress and egress to the property through the opening in the fence. Appellant and his companion were in the vehicle at the time of the search.
Appellant's sole argument is that his vehicle was not within the scope of the warrant because it was not within the curtilage of the residence.[1] The trial court concluded that, because part of Appellant's vehicle extended into the driveway portion of the right-of-way, the vehicle was within the curtilage. We disagree.
The term "curtilage" in the Fourth Amendment context describes the area around a home that is "intimately tied to the home itself." United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).[2] "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." Id. at 300, 107 S.Ct. 1134. Clearly, the legal boundaries of a given piece of property do not necessarily define its curtilage for Fourth Amendment purposes. To determine the scope of the curtilage to a particular residence, we must consider the four factors identified in Dunn. Wilson v. State, 952 So.2d 564, 568-69 (Fla. 5th DCA 2007). They are: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." Dunn, 480 U.S. at 301, 107 S.Ct. 1134.
Here, an analysis of the four factors leads to the inescapable conclusion that the area outside the chain link enclosure is outside the curtilage of the residence. Although the proximity factor favors the State's argument, all of the remaining factors favor Appellant. The fact that the homeowner chose to enclose a portion of the yard with a chain-link fence is perhaps the most compelling fact here. See Dunn, 480 U.S. at 302, 107 S.Ct. 1134 (use of fence to separate area around house from other area is "significant");[3]see also United States v. Gerard, 362 F.3d 484, 487-88 (8th Cir.2004) (presence of fence between primary residence *1221 and another area typically means area is outside curtilage). Similarly, the third and fourth Dunn factors support Appellant's position. Although a small portion of the area outside the fence was used as a point of ingress and egress, it was outside the fence and within an area designated as a public right-of-way. The homeowner manifested no attempt to protect against observation by people passing by.[4]
Accordingly, we reverse the order denying the dispositive motion to suppress and remand this cause with instructions to grant the motion and vacate the judgment and sentence.
REVERSED AND REMANDED.
LAWSON and COHEN, JJ., concur.
TORPY, J., concurs specially with opinion.
TORPY, J., concurring specially.
I agree that the search of Appellant's vehicle was not authorized by the warrant because it was not located within the "curtilage." See Hartpence v. State, 509 So.2d 975 (Fla. 5th DCA 1987). Had the warrant authorized searches of vehicles anywhere on the "premises," the result might have been different-at least as to the issue raised by Appellant. The more interesting question to me is the one that was not raised or argued: whether the police have the authority to search a vehicle, even if located within the curtilage, when there is no reason to suspect a connection to the illegal activity. The decisional law on this issue is less than clear.
In State v. Haugee, 402 So.2d 1216 (Fla. 5th DCA 1981), for example, a divided panel of this Court authorized the search of a vehicle owned by a person who was present at a home when a search warrant was executed, despite the owner's lack of connection to the suspected illegal activities. We reasoned that a contrary view would enable criminals to hide contraband in an un-owned vehicle and avoid its detection. Id. at 1218; accord State v. Booream, 560 So.2d 1303 (Fla. 2d DCA 1990) (police may search visitor's car located within curtilage). Other courts have confirmed that no "nexus" is required between a vehicle within the curtilage and the suspected illegal activities, even when it is apparent that the vehicle is not under the control of an occupant of the premises. In Lowe v. State, 751 So.2d 177 (Fla. 2d DCA 2000), for example, the defendant arrived in his vehicle while the search was underway. Despite the lack of nexus between the defendant, the searched premises or the suspected drug dealer, the court upheld the search of his vehicle, although acknowledging that the search of his person would not be authorized (apparently based on Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)).
*1222 A seemingly contrary view is expressed in Simmons v. State, 491 So.2d 1307, 1309 (Fla. 1st DCA 1986), where the court held that there must be "some evidentiary connection" between the searched vehicle and the residence that is the object of the search. In that case, the court determined that the connection was established because the owner of the vehicle lived in the residence, although he was not the target of the investigation. Id.; see also State v. Freeman, 673 So.2d 139 (Fla. 5th DCA 1996) (expressing view that no nexus required, albeit under facts similar to Simmons).
In Miller v. State, 516 So.2d 1118 (Fla. 1st DCA 1987), our sister court, in reliance on Simmons' "connection" test, concluded that the search of an unattended vehicle parked within the curtilage of the searched premises was not authorized because of the lack of connection to the residence. Apparently, the owner of the residence operated an automobile repair business and the searched vehicle was parked among junk cars and other cars waiting for repairs. The Miller panel certified conflict with Haugee, an ostensible conflict that remains unresolved.
A review of the federal authorities on this point also suggests somewhat divergent views. For example, in United States v. Cole, 628 F.2d 897, 900 (5th Cir.1980), a divided panel of the Fifth Circuit concluded that a warrant authorizing the search of vehicles within the curtilage permitted the search of a vehicle that arrived on the premises just as the warrant execution was commencing. In that case, the vehicle parked in the carport just as police arrived. In distinguishing an earlier precedent from the same court, the dissent observed:
A different result might be in order if [the appellant] and his truck, were not observed arriving by the officers as all parties converged on the scene, and in this respect Napoli[5] neither controls nor was wrongly decided. For purposes of construing the scope of a premises search warrant, it is much more reasonable to regard a car which is discovered for the first time already on the premises to be searched as a part of the premises, subject to search. The allegations in support of the issuance of a warrant might well justify the magistrate reasonably to intend, and the policeman reasonably to understand the magistrate to mean, a description of "premises" to include anything at the described location which is under the control or direction of the person whose effects are to be searched which might serve as a hiding place for the contraband sought. But this reasoning cannot apply to an outsider who shows up during the course of a search. ... To say in effect that the warrant's use of the word "premises" alone suffices as a determination by the magistrate, resting on probable cause, that the warrant extend to any and all visitors found on the premises, is to stretch the word beyond its normal meaning, or, as discussed above, its reasonable interpretation. The use of the word "premises" alone does not, and should not, include visitors or their vehicles caught in the act of visiting.
Id. at 900-01 (Clark, J., dissenting).
In United States v. Tamari, 454 F.3d 1259, 1262 (11th Cir.2006), the Eleventh Circuit relied upon Cole and upheld the search of a vehicle that arrived during the execution of a warrant. The court rejected the contention that the search of a vehicle is unauthorized unless under the "dominion and control of the premises' *1223 owner." Id. It also rejected the contention that the rule should be different when the vehicle arrives during the execution of the warrant. Although the police had independent evidence that the vehicle was involved in the criminal conspiracy under investigation, this fact did not appear to have relevance to the court's decision, since it relied upon Cole and other precedents holding that a nexus is not needed. See United States. v. Martinez-Cortes, 566 F.3d 767, 769 (8th Cir.2009) (warrant authorized search of car seen leaving curtilage at moment of warrant's execution); United States v. Thompson, 91 F.3d 145 (6th Cir.1996) (search of vehicle on premises authorized where owner present at time of warrant's execution and keys in vehicle; reasonable to conclude vehicle within scope of warrant due to presence on premises).
One federal circuit court has adopted a test that appears to have some traction. In United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir.1990), neither the appellant nor his vehicle were suspected of involvement in the criminal activity, but the vehicle had been on the premises, in an apparent inoperable state, for several weeks prior to the execution of the warrant. Just prior to the execution of the warrant, the object of the investigation and the appellant were seen moving items between the vehicle and the house. During the search of the house, an illegal pipe bomb was discovered in a briefcase that contained papers with the appellant's name on them. The court rejected the argument that the search warrant should be limited to vehicles on the premises owned or controlled by the premises owner. The court adopted the following test:
We believe the better rule in these circumstances is to define the scope of the warrant to include those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled. Thus where the officers act reasonably in assuming that the automobile is under the control of the premises owner, it is included in the warrant.
Id.
Neither the Florida Supreme Court nor the United States Supreme Court has apparently weighed in on this subject as of yet, so we are left without definitive guidance and somewhat conflicting precedents. Even against this uncertain backdrop, however, there does seem to be some consensus among the courts in a variety of scenarios. First, when the vehicle is located within the curtilage at the time the warrant is executed, and is owned or controlled by someone who lives on the premises, it may be searched, even if the owner is not connected to the investigation. Second, when the vehicle is connected with the criminal activity or the premises, based upon information known prior to the execution of the warrant or discovered during its execution, it may be searched. Third, when a non-resident guest is present in the residence when the search is commenced and the keys to the vehicle are on his person or on the premises, even under circumstances where the search of his person is not authorized, the search of the vehicle would be permitted on the theory that contraband might be hidden there. Fourth, where an unattended vehicle is observed within the curtilage, and police are unaware of when it was first parked there, even if the owner is not on the premises at the time the warrant is executed, most courts would permit the search of the vehicle.
Under the fourth scenario, as the dissent in Cole points out, it is reasonable for the police to conclude that the vehicle is *1224 under the control of one or more of the residents. The police should not be required to conduct an investigation to determine the ownership or control of a vehicle of this nature while in the process of executing a warrant. Miller expresses a contrary view but it does not appear to be in the mainstream in cases under this fourth scenario. Nevertheless, Miller may be correct for a different reason  that the vehicle was not within the curtilage. It was located next to a separate building used to house an automobile repair facility. Miller may also be distinguished because it closely resembles the situation in Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), where the search was conducted at a business and innocent customers (or their vehicles in the case of Miller) were present during the search.
The more difficult scenario is the one where an attended vehicle arrives or is present during the execution of a warrant with no other connection to the investigation or residence. Some courts would apparently permit the search; others would not. The rationale for searching an unattended and otherwise unconnected vehicle within the curtilage appears reasonable  that it might be used as a hiding place and police may reasonably infer a connection merely from its presence on the property. Police should not be put to the task of investigating the connection or lack of connection of unattended vehicles in the midst of executing a warrant. When the vehicle is attended, however, and obviously unconnected to the premises, there is little justification for the search. The constitutional polestar for any search is reasonableness. The fact that a vehicle is within the literal scope of a warrant does not make it reasonable to search any vehicle irrespective of the circumstances. While police might not have a duty to conduct an in-depth investigation to determine a lack of connection, they should not be able to ignore the obvious. Clearly, it is not reasonable to search a pizza delivery person's car, the mail truck or a school bus, merely because they happen upon the curtilage at the time of execution of a warrant that authorizes the search of vehicles within the curtilage of a subject property.
I think the Gottschalk test seems workable. This would permit a search in the four scenarios I identified but not permit the search of the delivery vehicle, mail truck or school bus. Nor would the search in Lowe be permitted under this test. The Gottschalk test bears some similarity to the Simmons "some connection" test except it has an objective component, which permits police to draw reasonable inferences from the circumstances. As for Cole, I think the fact that the vehicle was driven in and parked in the carport objectively suggested that the driver had an intimate connection to the residence more than a casual visitor. I would have authorized that search under the second component of the Gottschalk test. Although there might be circumstances where a vehicle's occupants act suspiciously so as to justify a Terry stop or search, the authority to search under those circumstances would be independent from the authority granted under the warrant.
Adverting now to the facts of this case, even if the vehicle were technically within the curtilage, I would conclude, nevertheless, that the search was not authorized under the warrant. The police had observed the attended vehicle for thirty minutes prior to the execution of the warrant. The occupants made no contact with the residence or its occupants. This is clearly contrary to what would be expected from a drug purchaser or someone who is an invitee of the resident. The car was parked in an area accessible to any passerby. Under these facts, it was not objectively reasonable to believe that the vehicle was connected *1225 to the searched premises or its residents.
NOTES
[1] Appellant does not argue (and we do not consider) the lack of any connection between Appellant's vehicle and the suspected illegal activities or persons that were the target of the warrant.
[2] This is a mixed question of law and fact. We defer to the trial court regarding factual disputes, but afford no deference in applying the law to the facts. United States v. Johnson, 256 F.3d 895, 913 (9th Cir.2001); State v. Glatzmayer, 789 So.2d 297 (Fla.2001); Taylor v. State, 848 So.2d 1191 (Fla. 5th DCA 2003).
[3] Although not conclusive, "[f]encing configurations are important factors in defining the curtilage." Dunn, 480 U.S. at 301 n. 4, 107 S.Ct. 1134. "`[F]or most homes, the boundaries of the curtilage will be clearly marked; and the conception defining the curtilage-as the area around the home to which the activity of home life extends-is a familiar one easily understood from our daily experience.'"). Id. at 302, 107 S.Ct. 1134 (quoting Oliver v. United States, 466 U.S. 170, 182, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). The fact that the fence has a gap for ingress and egress does not affect our analysis. See United State v. Hatch, 931 F.2d 1478, 1481 n. 2 (11th Cir. 1991) (not necessary that fence defining curtilage be complete).
[4] "Curtilage" cases often come up in a different context  where police have entered property without a warrant and observed criminal activity in plain view from a vantage point within the legal boundary of the property. In that context, the State typically argues that the confines of the curtilage are narrow in scope. In Wilson, for example, we concluded that the area where police were standing when they peered into a greenhouse was not within the protected curtilage of the residence, even though police crossed a fence to reach the greenhouse, which was well inside the legal boundary. Although the State urges an expansive interpretation of the word "curtilage" in this case, it makes no argument that the Dunn factors are inappropriate in discerning the curtilage boundary here. Surely, had a police officer been sitting in his car observing the residence from the exact place where Appellant parked his car, the State would rightfully assert that any plain view observations of the officer did not infringe upon protected space. In both contexts, the physical scope of the curtilage is and should be the same.
[5] United States v. Napoli, 530 F.2d 1198 (5th Cir.1976).