DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JUSTIN LEE PRICE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1293

[August 7, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Steven J. Levin, Judge; L.T. Case No. 56-2016-CF-003007-A.

Carey Haughwout, Public Defender, and Erika Follmer, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Justin Lee Price appeals his conviction and sentence for felony possession of cannabis, contending the trial court erred in denying his motion to suppress, misapprehending its discretion in sentencing, and relying upon an improper sentencing factor. We affirm without discussion the issue asserting the trial court misapprehended its discretion in sentencing. We affirm the denial of Price's motion to suppress, but reverse the sentence imposed because the record supports the conclusion that the trial court improperly relied upon Price's new arrest for marijuana occurring a week before sentencing. We remand the case for sentencing before a different judge.

*Background*

Price was charged with one count of possession of more than twenty grams of cannabis after police searched the car that he was driving and found a backpack with cannabis in it.

The search was incident to the execution of a search warrant on the property where the car was parked. The warrant authorized the search because the residence was the suspected headquarters for several drug dealers. Price was not listed on the search warrant as one of the owners of the property or as a target of the search. An italicized caption under a picture of the property identified it as "the desired residential location to be searched, along with any persons, vehicles and/or outbuildings found on the curtilage thereof." The search warrant authorized officers to "enter and search the said residence, curtilage, outbuildings, and conveyances, and persons located on said curtilage for items and contraband as listed above."

The property has a thirty-foot driveway that extends from the street to the front door of the residence. Anyone exiting the residence through the front door steps immediately onto the driveway. There is no porch on the front of the residence, and the driveway is not covered or enclosed in any way. The front yard is not fenced. At the time Price's vehicle was searched, there were four vehicles parked in the driveway. Price's car was parked at the end of the driveway closest to the street, with another vehicle parked in front of his vehicle. No part of Price's car was on the street.

The police searched Price's car while executing the warrant. They found an ounce of cannabis in a backpack laying on the back seat. After receiving *Miranda*[1] warnings, Price admitted that the backpack was his.

Price's attorney filed a motion to suppress the drug evidence and Price's confession arguing his vehicle was illegally searched because the search warrant only encompassed the subject residence and curtilage, and the driveway was not curtilage. At a hearing on the motion to suppress, Price testified that the night of the search was the first time he had been to the residence. He only knew one occupant of the residence and he was there to pick him up. He explained the backpack in his car was closed and could not readily be seen. Neither he nor his girlfriend gave police permission to search the car or the backpack. Price stated that the backpack was not his and that he confessed that the marijuana was his because the police threatened to charge him with sale and delivery if he did not.

After hearing argument from the State and the defense, the trial court found that the driveway was clearly curtilage "under any analysis" because it was connected to the house. It found that the search warrant extended to the car because Price was an invited visitor to the property and the car

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

was within the curtilage.  Consequently, the trial court denied Price's motion to suppress.

After the motion to suppress was denied, Price entered an open plea of no contest, reserving his right to appeal the denial of his motion.  At sentencing, Price and his girlfriend testified that he would do well under supervised release.  Price's attorney argued that he should receive supervised release and the State argued for two years in prison.

The trial court adopted the State's recommendation.  Preliminary to imposing a 24-month prison sentence, the trial court said:

> THE COURT:  Okay.  Thank you.  Mr. Price, you got yourself in this bind and I look at it and I look—you've had a misdemeanor since this happened apparently and it—I— that's probably marijuana too or every one's marijuana. . . . It just seems like now it's marijuana.  So I don't have any idea how this is going to stop.  And if I give you five years or four years or three years or two years or whatever, it—how's it going to stop?  I don't know any way it's going to stop.  I really don't.  There's no indication it's going to and that's what bothers me the most.  If it's marijuana there's one way to stop it and that is—well, it—but the bottom line is that—for him to relocate.  But the bottom line is it is what it is today. . . .
>
> Yeah, Mr. Price, I can tell you I've seen a lot of people in front of me, you seem to come across well, you seem to be able to handle the future, it's just I—I wish I was a—I really do, I wish I was a magic person and I could stop all this.  I mean I really do because you seem to be—but the state's offer is totally— statement is totally reasonable.  I can't really deny to do that and I'm not just going to undercut it for the sake of undercutting it.  So that's where we're going to go and when you get out take care of it, sir.  Take care of it.  What happens with his misdemeanor charge?
>
> [PROSECUTOR]:  It's—I don't even—I don't even know if it was filed on yet, because it was just last week.

After sentencing, Price gave notice of appeal.

*Appellate Analysis*

*Denial of the Motion to Suppress*

A trial court's ruling on a motion to suppress is reviewed under a mixed standard. Factual findings are reviewed for competent and substantial evidence; application of the facts to the law is reviewed de novo. *State v. Young*, 974 So. 2d 601, 608 (Fla. 1st DCA 2008).

Although the trial court grounded its denial of the motion to suppress upon concluding that Price's vehicle was parked within the curtilage of the residence, we do not need to wade into the nettlesome issue of what was within the curtilage of the residence searched.

In this instant case, the warrant authorized officers to "enter and search the said residence, curtilage, outbuildings, and *conveyances*, and persons located on said curtilage for items and contraband as listed above." We construe the term "conveyances," as used in the warrant to refer to vehicles. Black's Law Dictionary defines a vehicle as: "1. An instrument of transportation or conveyance. 2. Any *conveyance* used in transporting passengers or things by land, water, or air." *Vehicle*, Black's Law Dictionary (11th ed. 2019) (emphasis added). More importantly, given the use of commas in the sentence, we do construe the qualifying language "located on said curtilage" to refer to persons and not conveyances. With regard to physical structures, we view the warrant to authorize the search of the "residence," "curtilage," "outbuildings," and "conveyances" located on a parcel of real property with a specific address.

The Second and Fifth Districts agree that vehicles within the curtilage may be searched if the warrant expressly authorizes the search of vehicles. *See Howard v. State*, 59 So. 3d 229, 231-32 (Fla. 2d DCA 2011) (affirming search of a vehicle where the warrant included the search of "all vehicles on the premises and *curtilage*") (emphasis added); *Lowe v. State*, 751 So. 2d 177, 178-79 (Fla. 2d DCA 2000) (affirming a vehicle search where the warrant authorized the search of the "premises together with the yard and *curtilage* thereof, and . . . *all . . . vehicles thereon*") (emphases added); *State v. Ferris*, 623 So. 2d 752, 753-55 (Fla. 2d DCA 1993) (reversing where the warrant authorized the search of "the residence, *its curtilage*, and persons therein or *vehicles thereon* reasonably believed to be connected with the described illegal activities") (emphases added); *Richardson v. State*, 547 So. 2d 323, 324 (Fla. 5th DCA 1989) (affirming a vehicle search where the warrant authorized the search of the premises "together with the yard and *curtilage* thereof, and *all vehicles thereon*") (emphases added); *State v. Musselwhite*, 402 So. 2d 1235, 1236-37 (Fla. 2d DCA 1981) (reversing

suppression of evidence found in a vehicle parked in a driveway where the search warrant authorized the search of a "all vessels and *vehicles found within the curtilage*") (emphasis added).

Similar to the above cases which have upheld searches of vehicles located within the curtilage of a residence based on the language of warrants describing the scope of locations on real property to be searched, in this case, the search warrant authorized the search of *any vehicle located on the property*. Under the Fourth Amendment, we deem the search of Price's vehicle to be a reasonable one because it was specifically authorized by a judicial officer. "Generally, the scope of a lawful search of fixed premises pursuant to a warrant extends to the entire area in which the object of the search may be found." *Jackson v. State*, 18 So. 3d 1016, 1028 (Fla. 2009). "As a principle of clearly established constitutional law, a search warrant must particularly describe the items law enforcement officers are authorized to seize *as well as the geographical location they are authorized to search*." *Merriel v. State*, 7 So. 3d 587, 589 (Fla. 1st DCA 2009) (emphasis added).

The Second and Fifth Districts do not require "a nexus between any vehicle found on the property and the alleged illegal activity when the search warrant authorizes the police to search any vehicle within the curtilage of the premises." *Lowe*, 751 So. 2d at 179 (quoting *State v. Freeman*, 673 So. 2d 139, 141 (Fla. 5th DCA 1996) (listing cases stating that no nexus is required)).

We acknowledge that in *Dunn v. State*, 292 So. 2d 435, 435-36 (Fla. 4th DCA 1974), we reversed the denial of a motion to suppress where a vehicle parked in a driveway was searched during the execution of a search warrant for a residence and curtilage. In *Dunn*, we said: "In the case at hand, there was no such evidence to connect the vehicle in question with the premises and we believe some such evidence necessary in order to authorize the search of a vehicle parked even within 'the curtilage.'" *Id.* at 436. However, we distinguish the instant case from *Dunn* on the basis that unlike this case, the search warrant in *Dunn* authorized the search of "certain premises And [sic] the curtilage," but said nothing about vehicles or other structures. *Id.* Similar to *Dunn*, the First District in *Miller v. State*, 516 So. 2d 1118 (Fla. 1st DCA 1987), reversed the denial of a motion to suppress the search of a vehicle after determining there was "no evidentiary connection between the residence authorized to be searched and appellants' vehicle." *Id.* at 1119. We again distinguish this case from *Miller* because in *Miller*, the warrant authorized "the search of the 'premises and curtilage thereof' for marijuana" and the warrant said nothing about vehicles or other structures. *Id.*

Because we are satisfied that the search warrant in this case specifically authorized the search of any vehicles located on the property, we affirm the denial of the motion to suppress, without addressing the correctness of the trial court's premise that the vehicle was within the curtilage of the home. *Ramkelawan v. State*, 152 So. 3d 680, 681 (Fla. 4th DCA 2014) (quoting *Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) ("[T]he 'tipsy coachman' doctrine[] allows an appellate court to affirm a trial court that 'reaches the right result, but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record.'")).

*Consideration of an Improper Sentencing Factor*

Although an appellate court generally may not review a sentence that is within statutory limits under the Criminal Punishment Code, when the trial court relies upon a constitutionally impermissible factor in imposing a sentence, an exception exits. *See, e.g., Dowling v. State*, 829 So. 2d 368, 370-71 (Fla. 4th DCA 2002); *Evans v. State*, 816 So. 2d 742, 743-44 (Fla. 4th DCA 2002). Reliance upon an improper sentencing factor is fundamental error. *Gage v. State*, 147 So. 3d 1020, 1022 (Fla. 2d DCA 2014). With a claim that the trial court relied upon an improper sentencing factor, our review is de novo, regardless of whether it was raised below. *Josephs v. State*, 86 So. 3d 1270, 1272 (Fla. 4th DCA 2012).

Our supreme court has clearly stated that "a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." *Norvil v. State*, 191 So. 3d 406, 407 (Fla. 2016). This is a "bright line rule for sentencing purposes," designed to protect due process. *Id.* at 410.

Even though it was Price's attorney who first mentioned, generically, "there was [sic] new misdemeanor charges . . . last week," it is clear from the transcript that the trial court knew the arrest was for marijuana. It is also clear that the trial court mentioned the new marijuana arrest two separate times in discussing its reasoning for the sentence imposed, all in the context of marijuana use and "how is this going to stop." Perhaps most concerning is the trial court's statement:

> I don't know any way it's going to stop. I really don't. *There's no indication it's going to and that's what bothers me the most. If it's marijuana there's one way to stop it and that is*—well, it—but the bottom line is that—*for him to relocate.* But the bottom line is it is what it is today.

6

(emphases added).  Our review of the transcript leads us to conclude that Price's new arrest for marijuana a week before sentencing in this case was an improper factor considered by the trial judge at sentencing.

*Conclusion*

We affirm Price's conviction, but reverse the sentence imposed and remand for resentencing before a judge other than the original sentencing judge.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

WARNER and GERBER, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

7